UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GABRIELLE KARAM, SAMANTHA STEVENS, and MEREDITH KARAM, individually and on behalf of all others similarly situated, | CIVIL ACTION NO. |
| | SECTION: |
| | JUDGE: |
| VERSUS | MAGISTRATE: |
| TEA DATING ADVICE, INC. | |

## NOTICE OF REMOVAL

**TO:    THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

Defendant Tea Dating Advice, Inc. ("Tea"), by and through undersigned counsel, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, hereby provides notice of removal of this action from the Civil District Court for the Parish of Orleans to the United States District Court for the Eastern District of Louisiana. In support of removal, Defendant states as follows:

## BACKGROUND AND TIMELINESS OF REMOVAL

1.

On August 6, 2025, Plaintiffs filed a Class Action Petition and Demand for Jury Trial (the "Complaint") on behalf of themselves and purportedly on behalf of all others across the nation similarly situated against Tea in the Civil District Court for the Parish of Orleans, in an action titled *Gabrielle Karam et al v. Tea Dating Advice, Inc.,* Case No. 2025-07671 (the "State Court Action").

2.

Plaintiffs' State Court Action is one of thirteen putative nationwide class actions brought against Tea following an alleged July 2025 "data breach … through which unauthorized third parties accessed, exfiltrated, and potentially distributed" Plaintiffs' personal data. Compl., Preliminary Statement; *see also, e.g. Reyes v. Tea Dating Advice, Inc.*, 3:25-cv-06321-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc. et al*, Case No. 3:25-cv-06325-WHO (N.D. Cal.); *Doe II v. Tea Dating Advice, Inc*., Case No. 3:25-cv-06336-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc*., Case No. 3:25-cv-06363-WHO (N.D. Cal.); *Jones v. Tea Dating Advice Inc*., Case No. 3:25-cv-06376-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc*., Case No. 3:25-cv-06433-WHO (N.D. Cal.); *Brown v. Tea Dating Advice Inc*., Case No. 3:25-cv-06445-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc*., Case No. 3:25-cv-06457-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc*., Case No. 3:25-cv-06559-WHO (N.D. Cal.); *Tucker v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06669-WHO (N.D. Cal.); *Vargas v. Tea Dating Advice In*c., Case No. 3:25-cv-06691-WHO (N.D. Cal.); *Korennikova v. Tea Dating Advice, Inc*., Case No. 3:25-cv-06722-WHO (N.D. Cal). All of the other cases are pending before the Honorable William H. Orrick, III in the Northern District of California, the district in which Tea's principal place of business is located.

3.

Pursuant to 28 U.S.C. § 1446(a) and Local Rule 3.2, Tea attaches (a) a list of all parties remaining in the action; (b) copies of all pleadings filed in the state court. [List of Parties and Pleadings Pursuant to 28 U.S.C. § 1447(b) attached as Exhibit 1; Petition for Damages filed August 6, 2025 attached as Exhibit 2; Citation and Service of Copies of Petitions Issued attached as Exhibit 3; Supplemental and/or Amending Petition and its Exhibits A, B, & C filed August 15, 2025 attached as Exhibit 4; Letter from Attorney Requesting Issuance of Service filed August 20, 2025

attached as Exhibit 5; Motion for Temporary Restraining Order and for Preliminary Injunction filed August 22, 2025 attached as Exhibit 6; Citation and Service Copies of Petitions Issued attached as Exhibit 7.]. Although Local Rule 3.2(c) provides that a removing defendant must file copies of the return of service of process filed in state court, Tea files this Notice of Removal before service of the initial state court pleading.

4.

A notice of removal must be filed less than 30 days of receipt by the defendant, through service or otherwise, of a copy of the initial pleading. 28 U.S.C. § 1446(b)(1). Plaintiff filed this suit on August 6, 2025. Although Tea has not yet been served, a case may be removed prior to formal service of process. *See, e.g., Ellis v. Miss. Farm Bureau Cas. Ins. Co*., No. 20-1012, 2020 WL 2466247, at *3 (E.D. La. May 13, 2020) ("[W]hen [plaintiff] filed his petition in state court, he commenced the present litigation and permitted [defendant] to file its notice of removal, even without proper formal service of process or waiver of such."); *see also Delgado v. Shell Oil Co*., 231 F.3d 165, 177 (5th Cir. 2000) (holding "[g]enerally, service of process is not an absolute prerequisite to removal.").

**VENUE**

5.

This Court is in the judicial district and division embracing the place where the state court action was brought and is pending. Specifically, the United States District Court for the Eastern District of Louisiana embraces the Civil District Court for the Parish of Orleans. Thus, this Court is the district court to which this case is properly removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## NO ADMISSION

6.

Tea denies any liability in this case, both as to Plaintiffs' individual claims and as to the claims of the members of the putative class. In alleging the amount in controversy and other matters in this removal pleading, Tea does not concede any liability, damages, or any other claims or defenses. Tea is only stating what the stakes of litigation could be under Plaintiffs' allegations as set forth in their Complaint.

## GROUNDS FOR REMOVAL

7.

This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

8.

CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 274 n.13 (5th Cir. 2009) (quoting 28 U.S.C. § 1332(d)(1)(B)).

9.

Plaintiffs bring this action as a "class action" and seek class certification under Louisiana law pursuant to La. Code Civ. Proc. Ann. art. 591. Compl., ¶ 19. Because Louisiana's Rule is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the State Court Action is a class action for CAFA purposes. *See In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (finding La. Code Civ. Proc. art. 591(A) is "a state

statute that authorizes class actions to be brought by a person" because it "permits members of a class to sue or be sued as representative parties.").

## CAFA JURISDICTION

10.

"CAFA contains a basic jurisdictional test for removal, which requires the removing defendant to prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more." *Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc*., 485 F.3d 793, 797 (5th Cir. 2007). For CAFA jurisdiction to exist, the putative class must also consist of at least 100 members. 28 U.S.C. § 1332(d)(5)(B). Minimal diversity for purposes of CAFA requires only that one plaintiff be diverse from one defendant. *DeHart v. BP Am., Inc*., No. 09 CV 0626, 2010 WL 231744, at *7 (W.D. La. Jan. 14, 2010).

11.

As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Tea may remove the State Court Action to federal court under CAFA because: "(1) the case is a class action brought on behalf of at least one hundred putative class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (3) any member of a class of plaintiffs is a citizen of a state different from any defendant." *Escoe v. State Farm Fire & Cas. Co*., No. CIV.A.07-1123, 2007 WL 1207231, at *1 (E.D. La. Apr. 23, 2007) (citing 28 U.S.C. § 1332(d)).

## SIZE OF THE PUTATIVE CLASS

12.

CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5). Plaintiffs seek to represent "All U.S. citizens who downloaded and used the Tea App

prior to and/or at the time of the Breaches." Compl., ¶ 20. This class includes–but is not limited to–"those whose images, PII, and/or direct messages were disclosed in the First Breach announced on July 25 and/or the Second Breach announced on July 28, 2025." *Id.*

13.

Plaintiffs assert that the data incident impacted the personal data of "thousands–if not millions–of [Tea] users." Compl., Preliminary Statement. Tea is in the process of determining the exact number of individuals whose information may have been involved in the data incident. However, as of this date, notification already has been disseminated to 4,244 individuals. *Tea Dating Advice Inc. Data Breach Notification*, Office of the Maine Attorney General (last accessed Sept. 1, 2025) https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a2eaaf9e-7b21-4d9a-96ce-f852ec1d46b5.html. Thus, per the allegations in the Complaint, the putative class size exceeds the CAFA jurisdictional threshold.

## "MINIMAL DIVERSITY" OF CITIZENSHIP EXISTS

14.

Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014).

15.

Defendant's Citizenship. A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518 (5th Cir. 2015); *see also* 28 U.S.C. § 1332(c). A corporation's "principal place of business is 'where the corporation's high-level officers direct, control, and coordinate the

corporation's activities.'" *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)). Defendant

is a Delaware corporation with its principal place of business in California, Compl., ¶ 6, and is

therefore a citizen of Delaware and California.

16.

Plaintiffs' and the Putative Class Members' Citizenship. For diversity purposes, "the term

citizenship is synonymous with domicile." *Martin v. Lafon Nursing Facility of the Holy Fam.,*

*Inc*., 548 F. Supp. 2d 268, 273 (E.D. La. 2008). "Domicile requires residence in the state and an

intent to remain in the state." *Preston v. Tenet Healthcare Indians v. Holyfield*, 485 F.3d 793, 798

(5th Cir. 2007) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). As

alleged in the Complaint, Plaintiff Gabrielle Karam is a resident of New Orleans and a citizen of

Louisiana, and Plaintiffs Samantha Stevens and Meredith Karam are residents of Lake Charles and

citizens of Louisiana. Compl., ¶¶ 1-3. Accordingly, absent evidence to the contrary, Plaintiffs are

citizens of Louisiana for diversity jurisdiction purposes.

17.

Because Defendant is a citizen of Delaware and California and Plaintiffs are citizens of

Louisiana, at least one member of the class is diverse from Defendant and minimal diversity is

met.

## AMOUNT IN CONTROVERSY

18.

Because Louisiana plaintiffs cannot state the amount of their alleged damages in their

complaint, "a defendant seeking to sustain removal may follow either of two tracks: (1) Adduce

summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the class

plaintiffs' pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met."

*See Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 231 (5th Cir. 2014). "As specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81, 135 S. Ct. 547, 549, 190 L. Ed. 2d 495 (2014). "[I]t is 'what the plaintiff is claiming' and not what 'the plaintiff is likely to ... be awarded' that determines whether CAFA's jurisdictional amount requirement is satisfied." *Carter v. Westlex Corp*., 643 F. App'x 371, 376 (5th Cir. 2016) (citing *Robertson v. Exxon Mobil Corp*., 814 F.3d 236, 240 (5th Cir. 2015)). Courts must aggregate the claims of all individual class members when determining whether the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6).

19.

Here, Plaintiffs' Complaint pleads causes of action for: (1) invasion of privacy; (2) negligence; (3) breach of contract; (4) unjust enrichment; and (5) violations of federal and fifty-six (56) state consumer protection laws. Plaintiffs' prayer for relief seeks an award of compensatory and punitive damages, monetary sanctions, restitution and/or disgorgement of funds, attorneys' fees, costs, and pre- and post-judgment interest. As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

20.

Plaintiffs allege that Tea invaded Plaintiffs' privacy by "retaining possession of its users' verification images under false pretenses, and by allowing nefarious third-parties to access its users PII with ease." *Id.* at ¶ 43. Plaintiffs further allege that Tea "had a duty to have policies and procedures in place, and to act at all times in conformity with said policies and procedures, to

detect and prevent the unauthorized access or dissemination of PII." Compl., ¶ 49.  Plaintiffs also claim that Tea "had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, stolen, misused, accessed by, and/or disclosed to unauthorized parties." *Id.* at ¶ 47.

21.

Plaintiffs' Complaint contains no allegations that would support or suggest the amount in damages that they or the Class allegedly sustained as a result of Tea's purported negligence or invasion of privacy. However, Plaintiffs claim that Tea's alleged breaches caused them and the putative class members to "overpay for services, lose time monitoring their PII, diminish the value of the services they received, lose control over their PII, and caused the diminution in value of their PII." *Id.* at ¶ 54. Plaintiffs allege they are "in danger of imminent harm that their PII… will be used for fraudulent and illegal purposes." *Id.* at ¶ 55. Moreover, according to Plaintiffs' Complaint, Tea's invasion of privacy caused "humiliation, stress/anxiety, actual identity theft, fraud and/or phishing, cyber bullying, loss of money and costs incurred as a result of increased risk of identity theft, and loss of their PII." *Id.* at ¶ 44.

22.

Credit Monitoring: Plaintiffs seek to recover, among other things, "loss of time and resources to mitigate the effects of the Breaches," and actual, compensatory, and punitive damages on behalf of themselves and the putative class. *Id.* at ¶ 73; Prayer.  While the Complaint itself does not state the amount in controversy, one option for assigning value to these damages is through the cost of Plaintiffs' requested credit monitoring. In fact, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements in factually similar data

incident cases where the amount in controversy is not apparent from the face of the complaint. *See, e.g., Castillo v. Berry Bros Gen. Contractors Inc.*, No. 6:24-CV-01723, 2025 WL 1062091 at *2 (W.D. La. Apr. 8, 2025) (Find CAFA's $5,000,000 jurisdictional threshold met for a class of 6,210 individuals affected by a data breach on the grounds that providing the class with **ten** years of credit monitoring would cost over $22,000,000); *Comeaux v. Sw. Louisiana Hosp. Ass'n*, No. 2:23-CV-00295, 2024 WL 4284508at *2 (W.D. La. Sept. 9, 2024) (accepting "rates typically charged by credit monitoring services" as a "plausible statement of the amount in controversy."); *Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 WL 4051265, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12-cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).

23.

The three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $19.95 to $24.99 per person per month. LifeLock offers a product called Norton360 with LifeLock Advantage which provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $24.99 per month.[1] Similarly, both Equifax[2] and Experian[3] offer products that provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 and $24.99 per month, respectively.

---

[1] *See* https://us.norton.com/products/norton-360-lifelock-advantage (last visited August 29, 2025).
[2] *See* https://www.equifax.com/personal/products/credit/monitoring-and-reports (last visited August 29, 2025).
[3] *See* https://www.experian.com/protection/creditlock/ (last visited August 29, 2025).

24.

Taking the least expensive product–Equifax's $19.95 per month product—and multiplying the cost of just five years of the service for all individuals who thus far have received breach notifications (putative class members) ($19.95/month x 60 months x 4,244 individuals), the total cost would be $5,080,068. Taking the LifeLock or Experian products and applying the same calculation ($24.99/month x 60 months x 4,244 class members), the total cost would be $6,363,453.6. The costs of credit monitoring alone establish that there is over $5,000,000 in controversy in this action.  Notably, these calculations use the current notice population, versus Tea's membership at the time of the July 2025 data incident. Plaintiffs' allegations, however, imply that the Tea's *entire membership* (a population they assert is over 7 million users) is at risk.  *See* Mem. in Supp. of Mot. for TRO and Prelim. Inj., 5.

25.

Emotional Distress Damages: Plaintiffs also claim they are "entitled to recover" damages for their "emotional distress, humiliation, and stress/anxiety." Compl., ¶ 73. Emotional distress damages may be considered when determining amount in controversy. *See Pelas v. EAN Holdings, LLC*, No. CIV.A. 11-2876, 2012 WL 85841 at *2 (E.D. La. Jan. 11, 2012) (holding it was facially apparent the amount in controversy was met based on plaintiff's allegations including mental anguish, emotional distress, depression, and anxiety); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 388 (5th Cir. 2009) (amount in controversy satisfied where damages claimed included emotional distress and mental anguish). Courts in the Fifth Circuit may "look to similar cases to assist in determining the amount in controversy." *Atkins v. Ferro Corp.*, 314 Fed. Appx. 662, 663 (5th Cir.2009). In *Drew v. Equifax Info. Servs., LLC*, Case No. 3:07-cv-00726-SI, 2010 WL 5022466 (N.D. Cal. Dec. 3, 2010), the Northern District of California upheld a jury award of $315,000 in

emotional distress damages arising out of plaintiff's claim that he was the victim of identity theft. *Id*. at *2–3. Likewise, in *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007), the Fourth Circuit affirmed an "emotional distress award" to the plaintiff in the amount of $150,000." *Id*. at 507. While Plaintiffs do not allege the value of the emotional distress damages they seek, their inclusion of these damages in their Prayer makes it even more plausible that there is over $5,000,000 in controversy in this action.

26.

Private Information Value: Plaintiffs seek further recovery for the "diminution in the value of their personal data." Compl., ¶¶ 54, 73. The personal data at issue allegedly includes photographs, copies of their government-issued IDs, and private messages. *Id.* at Preliminary Statement. While Plaintiffs do not assign a specific dollar amount to the value of their personal data, plaintiffs in the related actions do. *See* Compl. ¶ 61, *Tucker v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06321-WHO (N.D. Cal.) (alleging "personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200."); Compl. ¶ 46, *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06457-WHO (N.D. Cal.) ("stolen PII and can be worth up to $2,000.00"); Compl. ¶ 39, *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06433-WHO (N.D. Cal.) ("PII can be sold at a price ranging from $40 to $200"); Compl. ¶ 31, *Brown v. Tea Dating Advice Inc.,* Case No. 3:25-cv-06321-WHO (N.D. Cal.) ("Private Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $2009"); Compl. ¶ 47, *Jones v. Tea Dating Advice Inc.*, Case No. 3:25-cv-06321-WHO (N.D. Cal.) ("U.S. driver's license numbers sell on average for $150 on the dark web."); Compl. ¶ 40, *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06363-WHO (N.D. Cal.) ("PII can be sold at a price ranging from $40 to $200."); Compl. ¶ 63, *Reyes v. Tea Dating Advice, Inc.*, 3:25-cv-06321-WHO (N.D.

Cal.) ("personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200."). Using the range alleged by plaintiffs in the same putative classes as the named plaintiffs (from $40–$2,000), Plaintiffs put an additional $169,760–$8,488,000 at issue by seeking to recover the value of their and putative class members' PII.

27.

Equitable Relief: Plaintiffs also seek "Injunctive Relief prohibiting Defendant from operating the Tea App until proper protections are put in place." Compl., Prayer. Courts in the Fifth Circuit evaluate requests for equitable or injunctive relief based on "the value of the object of the litigation, and the value of that right is measured by the losses that will follow." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996). The amount in controversy determination for CAFA cases "may be established either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." *Lewis v. Auto Club Fam. Ins. Co.*, No. CIV.A. 11-169-D-M2, 2011 WL 3444312, at *3 (M.D. La. July 7, 2011), *report and recommendation adopted*, No. CIV.A. 11-169-JJB-CN, 2011 WL 3444224 (M.D. La. Aug. 8, 2011).

28.

Applied here, Plaintiffs are seeking an order that Tea discontinue its app until undefined "proper protections" are put into place. Compl., Prayer. Likewise, in their Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiffs seek an order enjoining Tea from "continuing to operate its mobile application the 'Tea App' until it implements adequate data security policies, procedures, and practices to safeguard user data." Mem. in Supp. of Mot. for TRO and Prelim. Inj., 3. The injunctive relief sought puts significant amounts in controversy: the cost of implementing the unspecified security policies, procedures, and practices, and the lost

revenue from ceasing operations. As noted in the Report of the Senate Committee on the Judiciary on CAFA, when assessing the amount in declaratory relief claims, "[A] declaration that a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000." Senate Report No. 109–14 at 41. Thus, adding the aggregate cost of complying with Plaintiffs' untold changes to Defendant's cybersecurity practices increases the total alleged damages above the jurisdictional threshold.

29.

Disgorgement Request: Plaintiffs also ask the Court to order "[r]estitution and/or disgorgement of funds collected from Plaintiffs and other similarly-situated Class Members." Compl., Prayer. Tea users may use the app for free in a limited capacity, after which they may pay $15 per month for unlimited use. Tea is still determining what percentage of the notified population were paid users and how many months they paid for. However, if even half of the notified population were paid users and had paid for the app for three years, Plaintiffs are seeking disgorgement of over $1.1 million dollars, on top of the compensatory and injunctive relief they seek.

29.

Punitive Damages: Plaintiff also seeks punitive damages on the basis that Tea "is guilty of fraud and/or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiffs' and Class Members' rights." See Compl., ¶ 58, Prayer. The Fifth Circuit includes punitive damages in determining the amount in controversy "if, under the governing law of the suit, they are recoverable." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998) (quoting *Allstate Ins. Co. v. Hilbun*, 692 F. Supp. 698, 700 (S.D. Miss. 1988)); *see also Allen v. R*

*& H Oil & Gas Co.*, 63 F.3d 1326, 1337 (5th Cir.1995) (including punitive damages in the amount-in-controversy calculation); *White v. FCI USA, Inc*., 319 F.3d 672 (5th Cir. 2003) (same). Courts have approved punitive damage ratios of 4:1, punitive to compensatory. *See, e.g., Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–23 (1991) (4 times the amount of compensatory damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety"). Several of the consumer protection laws under which Plaintiffs bring their claims provide for the recovery of punitive damages. *See, e.g,* California Consumer Legal Remedies Act, Cal. Civ. Code § 1780(a)(4); Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110g(a); Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-608(a); Missouri Merchandising Practices Act, Mo. Rev. Stat.§§ 407.025(2); Oregon Unfair Trade Practices Act, Or. Rev. Suit. § 646.638(1).

30.

Other Claims and Requested Relief: In addition to the claims above, Plaintiffs state a claim to attorney fees and costs and pre- and post-judgment interest as allowed by law. Compl., Prayer. These amounts, to the extent they exist, combined with the other damages alleged in the Complaint, demonstrate that the amount in controversy is greater than $5,000,000.

31.

Accordingly, because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Tea has properly removed the State Court Action to this Court.

## **NOTICE**

32.

As required by 28 U.S.C. § 1446(d), Tea is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of the Notice of Removal with the Clerk of the

Civil District Court for the Parish of Orleans.

     WHEREFORE, Defendant Tea, hereby removes the State Court Action from the Civil District Court for the Parish of Orleans, to the United States District Court for the Eastern District of Louisiana.

     Respectfully submitted this 2nd day of September, 2025.


By:   */s/James M. Garner*
      JAMES M. GARNER (#19589)
      STUART D. KOTTLE (#37194)
      KAYLYN B. HANDY (#38673)
      SHER GARNER CAHILL RICHTER
       KLEIN & HILBERT, L.L.C.
      909 Poydras Street, Twenty-Eighth Floor
      New Orleans, Louisiana 70112
      Telephone: (504) 299-2100
      Facsimile: (504) 299-2300
      E-mails: jgarner@shergarner.com
             skottle@shergarner.com
             khandy@shergarner.com

      *Attorneys for Defendant Tea Dating Advice, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on Plaintiffs' counsel via electronic mail this 2nd day of September, 2025.

/s/ James M. Garner
JAMES M. GARNER

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | List of Parties and Pleadings Pursuant to 28 U.S.C. § 1447(b) |
| Exhibit 2 | Petition for Damages filed August 6, 2025 |
| Exhibit 3 | Citation and Service of Copies of Petitions Issued |
| Exhibit 4 | Supplemental and/or Amending Petition and its Exhibits A, B, & C filed August 15, 2025 |
| Exhibit 5 | Letter from Attorney Requesting Issuance of Service filed August 20, 2025 |
| Exhibit 6 | Motion for Temporary Restraining Order and for Preliminary Injunction filed August 22, 2025 |
| Exhibit 7 | Citation and Service Copies of Petitions Issued |