**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO.:  2025-07671                                                    DIVISION: "I-5"

**GABRIELLE KARAM, SAMANTHA STEVENS, AND MEREDITH KARAM,
INDIVIDUALLY AND ON BEHALF OF
A CLASS OF SIMILARLY-SITUATED INDIVIDUALS**

**VERSUS**

**TEA DATING ADVICE, INC.**

FILED: _____                    _____
                                                                          **DEPUTY CLERK**

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND FOR PRELIMINARY INJUNCTION

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Gabrielle Karam,

Samantha Stevens, and Meredith Karam, on behalf of themselves and all others similarly situated

(the "Class"), who, pursuant to Louisiana Code of Civil Procedure Articles 3601 and 3602,

respectfully move this court for a temporary restraining order and a preliminary injunction

enjoining Defendant Tea Dating Advice, Inc. ("Tea") from continuing to operate its mobile

application the "Tea App" until it implements adequate data security policies, procedures, and

practices to safeguard user data to protect against the imminent risk of stalking, domestic abuse,

dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and

sexual assault, all for the reasons more fully set forth in the Memorandum in Support of this

Motion.

WHEREFORE, Plaintiffs pray that a temporary restraining order issue immediately and

that Defendant Tea Dating Advice, Inc. be ordered to show cause why a preliminary injunction

should not be issued prohibiting Tea from continuing to operate its mobile application the Tea App

until it implements adequate data security policies, procedures, and practices to safeguard user

data to protect against the imminent risk of stalking, domestic abuse, dating violence, and/or the

threat of physical and sexual harassment and/or violence and abuse and sexual assault.

**EXHIBIT
6**

Because Louisiana Code of Civil Procedure Article 3610 directs that "no security is required when the applicant for a temporary restraining order or preliminary or permanent injunction is seeking protection from domestic abuse, dating violence, stalking, or sexual assault," security for the temporary restraining order is unnecessary. La. Code Civ. Proc. Ann. art. 3610.

Respectfully submitted,

Gladstone N. Jones, III (LA Bar No. 22221)
Lynn E. Swanson (LA Bar No. 22650)
Kevin E. Huddell (LA Bar No. 26930)
Thomas F. Dixon (LA Bar No. 38952)
Rosa E. Acheson (LA Bar No. 39775)
**JONES SWANSON HUDDELL LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA** 2025 AUG 22 PM 4: 08

**NO.:  2025-07671**                                  **DIVISION: "I-5"**

DISTRICT COURT

**GABRIELLE KARAM, SAMANTHA STEVENS, AND MEREDITH KARAM,**
**INDIVIDUALLY AND ON BEHALF OF**
**A CLASS OF SIMILARLY-SITUATED INDIVIDUALS**

**VERSUS**

**TEA DATING ADVICE, INC.**

**FILED: _____**

**_____**
**DEPUTY CLERK**

### MEMORANDUM IN SUPPORT OF MOTION FOR
### TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Gabrielle Karam, Samantha Stevens, and Meredith Karam, on behalf of themselves and all others similarly situated (the "Class") who respectfully submit this Memorandum in support of their motion requesting that the Court issue a temporary restraining order and a preliminary injunction (the "Motion"), pursuant to Louisiana Code of Civil Procedure article 3601, *et seq.*, enjoining Defendant Tea Dating Advice, Inc. ("Tea," sometimes "Defendant") from continuing to operate its mobile application the "Tea App" until it implements adequate data security policies, procedures, and practices to safeguard user data to protect against the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault.

Unless the Court enters a temporary restraining order and a preliminary injunction, Plaintiffs and millions of other users will suffer irreparable harm. Defendant has admitted to catastrophic security failures leading to at least three data breaches, exposing users' most sensitive personal information, including copies of their government-issued IDs, photographs, geolocation data, home addresses, and private messages concerning intimate health matters. The continued operation of the Tea App under these conditions presents an ongoing threat of further data exposure and misuse and identity theft, the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault constituting irreparable injury for which there is no adequate remedy at law.



3

## I.    **FACTUAL BACKGROUND**

Defendant operates the Tea App, a mobile application marketed as a "safe and private space" for women. In direct contradiction of its promises of security, Defendant engaged in fraudulent practices that resulted in a failure to safeguard the sensitive data of its users.

Defendant's privacy policy fraudulently claimed that verification images submitted by users, including photographs and government-issued IDs, were "immediately deleted" after use. However, Defendant has admitted to retaining at least 13,000 of these images for more than a year. This sensitive data was neither encrypted nor password protected, but rather it was stored in an unsecured Google Firebase storage bucket, accessible to *anyone* with an internet browser.

On or about July 25, 2025, Defendant acknowledged a massive data breach (the "First Breach") that compromised users' personal data. This exposed data included drivers' licenses and home addresses. As a direct result, malicious actors on the infamous image board, 4-chan, created and disseminated interactive maps showing the geolocation coordinates and personal images of Tea App users.

On July 26, 2025, a day after the First Breach, Defendant posted on Instagram that acceptance times would be delayed due to the First Breach, and provided that the Tea App had received millions of new requests from prospective users to join the Tea App.

Just three days after the First Breach, on July 28, 2025, another breach (the "Second Breach") occurred, which allowed unauthorized access to millions of private messages sent between the Tea App's users. These messages reportedly contained deeply personal information regarding matters such as abortions, allegations of sexual assault, and cheating partners.

Despite the Breaches, on July 30, 2025, Defendant posted on Instagram that it had expanded its approval team and accepted *over 800,000 new users* since the previous morning.[1]

---

[1]TheTeaPartyGirls, https://www.instagram.com/p/DMwTCEPx3xF/?igsh=bjRycHpudXVtaGhv, (last accessed 8/13/25).

4



Despite the First Breach and the Second Breach, and the irreparable harm they caused to prior and existing Tea App users, Defendant advertised that it would be further expediting the authorization process. This action was an attempt to attract new victims. Defendant has repeatedly put profit over people and the security of their data and personal well-being. Defendant will continue to do so unless and until this Court intervenes, by means of which Defendant is forced to reconcile with its negligence and employ proper security measures.

The risk of additional breaches and further exposure of users' PII is not merely speculative; it is an ongoing reality. On August 19, 2025, just three days before this filing, 404 Media reported that they had discovered a third security breach (the "Third Breach," together with the First Breach and the Second Breach, the "Breaches") that exposed the personal information of the women Tea paid to promote its app.[3]

This Third Breach left these women's names, emails, phone numbers, and Venmo accounts exposed online. Alarmingly, reports inform that all a hacker had to do to access this information was add "/admin" to the Tea affiliate site's URL. While this security failure is shocking, it should not come as a surprise.

In 2025, Tea's Chief Executive Officer admitted that he did not know how to code, so he entrusted the security of millions of users' data to foreign freelance coders, who Tea has admitted

---

[2] TheTeaPartyGirls, https://www.instagram.com/p/DMwTCEPx3xF/?img_index=1 (last accessed 8/13/25).

[3] 404Media, https://www.404media.co/how-teas-founder-convinced-millions-of-women-to-spill-their-secrets-then-exposed-them-to-the-world/, (last accessed 8/19/2025)

left a giant security hole.[4] Tea did not plug this security hole until after it had been reached for comment regarding this matter on August 13, 2025. When 404 Media made Tea aware of this breach, instead of addressing the gravely serious security flaws, a Tea spokesperson touted that they now have 100,000 new women joining the app each day and have over seven million users.[5] Through their own words and actions, Tea has proven it puts its own financial interests above everything else and will continue to do so unless it is forced to make a change. The resulting harms, including further data exposure and misuse and identity theft, the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault, cannot be adequately compensated by monetary damages after the fact.

Defendant admitted that the Breaches resulted from a failure to migrate legacy content to a new, more secure system. As a direct result of Defendant's fraud and negligence, Plaintiffs and the Class have suffered significant harm, including invasion of privacy, emotional distress, cyberbullying, an increased risk of identity theft, and the loss of their PII.

## II.    LAW AND ARGUMENT

Article 3601(A) of the Louisiana Code of Civil Procedure provides that injunctive relief shall issue "in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." La. Code Civ. Proc. Ann. art. 3601; *see also. Meredith v. Tram Investments, Inc.*, 130 So.3d 469, 472, 48,570 La.App. 2 Cir. 12/30/13, 3 (La.App. 2 Cir., 2013). An Applicant must also show that they will likely prevail on the merits. *See Holmes v. Peoples State Bank of Many*, 32,749 (La. App. 2 Cir. 3/3/00), 753 So. 2d 1006, 1010. The Louisiana First Circuit Court of Appeal holds that a trial court "should consider whether the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest." Chandler v. State, Dept. of Transp. & Development, 844 So.2d 905, 909, 2002-1410 La.App. 1 Cir. 3/28/03, 7 (La.App. 1 Cir.,2003)

---

[4] Those coders are not responding to media questioning. 404Media, https://www.404media.co/how-teas-founder-convinced-millions-of-women-to-spill-their-secrets-then-exposed-them-to-the-world/, (last accessed 8/19/2025)

[5] 404Media, https://www.404media.co/how-teas-founder-convinced-millions-of-women-to-spill-their-secrets-then-exposed-them-to-the-world/, (last accessed 8/19/2025)

1. **The continued operation of the Tea App as currently configured will cause irreparable injury.**

Here, the continued operation of the Tea App will cause irreparable injury. Courts define irreparable injury as meaning "the loss cannot be adequately compensated through money damages or measured by a pecuniary standard." *Davenport v. Chew*, 375 So.3d 973, 976, 2023-0036 La.App. 1 Cir. 9/15/23, 4 (La.App. 1 Cir., 2023) (*citing Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa*, 2004-0270 (La. App. 1st Cir. 3/24/05), 906 So.2d 660, 664. There, the court also held that "petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful." *Id.* Defendant's own admissions confirm its security systems are critically flawed, that it failed to protect the sensitive data it collects from its users, including Plaintiffs and the Class, and that, through its deceptive practices, it remains in violation of various state consumer protection laws, including the Louisiana Unfair Trade Practices Act.

2. **Plaintiffs are likely to succeed on the merits.**

Defendant has publicly admitted to the core facts supporting Plaintiffs' claims, including the failure to secure legacy data systems, the retention of verification images contrary to its privacy policy, and the resulting exposure of PII and private messages. These admissions, coupled with the fact that Defendant continues to allow breaches into its users' data, strongly support Plaintiffs' claims for negligence, invasion of privacy, and violations of consumer protection laws.

3. **The balance of harms overwhelmingly favors granting the injunction, and the issuance of the preliminary injunction will serve the public interest.**

The threatened harm to Plaintiffs outweighs the potential for harm or inconvenience to Defendant. The threatened harm to Plaintiffs and the Class from the continued operation of an insecure application is immense and potentially life-threatening. In contrast, any harm to Defendant would be purely economic and self-inflicted. As one of Tea's former employees said about Sean Cook, Tea's CEO, "his motive is money, not actually to protect people."[6] The temporary suspension of Defendant's business operations will serve to provide Defendant time in which it can implement the security measures it should have had in place from the beginning, as it represented that it had done to its users and the public. Public policy strongly favors protecting individuals from the catastrophic consequences of data insecurity over a company's interest in

---

[6] 404Media, https://www.404media.co/how-teas-founder-convinced-millions-of-women-to-spill-their-secrets-then-exposed-them-to-the-world/, (last accessed 8/19/2025)

uninterrupted profit. The threatened harm to Plaintiffs and the Class outweighs the potential harm to Defendant, and the issuance of this preliminary injunction does not disserve the public interest, it advances it.

### 4. The posting of security is not required in this instance.

There is an overwhelming amount of evidence that users impacted by the Breaches have, or are susceptible to becoming, victims of further data exposure and misuse and identity theft, the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault. Various online forums have been created for the sole purpose of harassing and stalking the individuals whose information was leaked in the Breaches. Plaintiffs seek a temporary restraining order to protect themselves and similarly-situated Class Members from further data exposure and misuse and identity theft, the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault, as reflected in the authorizations they filed into the record in the pleading titled Supplemental Petition for Damages.

Because Louisiana Code of Civil Procedure Article 3610 directs that "no security is required when the applicant for a temporary restraining order or preliminary or permanent injunction is seeking protection from domestic abuse, dating violence, stalking, or sexual assault," security for the temporary restraining order is unnecessary. La. Code Civ. Proc. Ann. art. 3610. Therefore, under Louisiana Code of Civil Procedure Articles 3603.1(C) and 3610, the posting of security by Plaintiff is not required.

### III.    **CONCLUSION**

Because all of the elements required for the granting of a temporary restraining order have been met, and for the other reasons set forth above, this Court should enter an immediate temporary restraining order and further order defendant Tea Dating Advice, Inc. to show cause why a preliminary injunction should not issue enjoining it from continuing to operate its mobile application the Tea App until it implements adequate data security policies, procedures, and practices to safeguard user data to protect against the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault.

Respectfully submitted,

Gladstone N. Jones, III (LA Bar No. 22221)
Lynn E. Swanson (LA Bar No. 22650)
Kevin E. Huddell (LA Bar No. 26930)
Thomas F. Dixon (LA Bar No. 38952)
Rosa E. Acheson (LA Bar No. 39775)
**JONES SWANSON HUDDELL LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

FILED
2025 AUG 22 PM 4:
CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO.: 2025-07671                                          DIVISION: "I-5"

**GABRIELLE KARAM, SAMANTHA STEVENS, AND MEREDITH KARAM,**
**INDIVIDUALLY AND ON BEHALF OF**
**A CLASS OF SIMILARLY-SITUATED INDIVIDUALS**

**VERSUS**

**TEA DATING ADVICE, INC.**

FILED: _____

                                                 _____
                                                 **DEPUTY CLERK**

### TEMPORARY RESTRAINING ORDER AND RULE TO SHOW CAUSE

CONSIDERING THE FOREGOING Motion for Temporary Restraining Order and for Preliminary Injunction, filed on behalf of Gabrielle Karam, Samantha Stevens, and Meredith Karam, individually and on behalf of all others similarly situated:

**IT IS ORDERED** that defendant Tea Dating Advice, Inc. is hereby enjoined and restrained from continuing to operate its mobile application the Tea App until it implements adequate data security policies, procedures, and practices to safeguard user data to protect against the imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault.

**IT IS FURTHER ORDERED** that because Plaintiffs are seeking protection from domestic abuse, dating violence, stalking or sexual assault (among other protections), Plaintiffs are relieved from the requirement to post security in this matter.

**IT IS FURTHER ORDERED** that Tea Dating Advice, Inc. show cause on the ___ day of _____, 2025 at ___ a.m./p.m. why Plaintiffs' temporary restraining order should not continue and a preliminary injunction should not issue enjoining Tea Dating Advice, Inc. from operating the Tea App until it can demonstrate that it has implemented adequate data security policies, procedures, and practices to safeguard user data to protect against the imminent risk of stalking,



domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or

violence and abuse and sexual assault.

FILED

2025 AUG 22  PM 4: 09

CIVIL
DISTRICT COURT

New Orleans, Louisiana, this ___ day of _____ 2025.

_____

**JUDGE LORI JUPITER**

**PLEASE SERVE:**
TEA DATING ADVICE, INC.
Through The Louisiana Long-Arm Statute
On the Registered Agent for Service:
Legalinc Registered Agents, Inc.
500 N. Brand Boulevard, Suite 890
Glendale, California 91023



VERIFIED

FILED

2025 AUG 22 PM 4:

CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO.: 2025-07671                                      DIVISION: "I-5"

**GABRIELLE KARAM, SAMANTHA STEVENS, AND MEREDITH KARAM,**
**INDIVIDUALLY AND ON BEHALF OF**
**A CLASS OF SIMILARLY-SITUATED INDIVIDUALS**

**VERSUS**

**TEA DATING ADVICE, INC.**

FILED: _____        _____
                                                    DEPUTY CLERK

**TEMPORARY RESTRAINING ORDER AND RULE TO SHOW CAUSE**

CONSIDERING THE FOREGOING Motion for Temporary Restraining Order and for

Preliminary Injunction, filed on behalf of Gabrielle Karam, Samantha Stevens, and Meredith

Karam, individually and on behalf of all others similarly situated:

**IT IS ORDERED** that defendant Tea Dating Advice, Inc. is hereby enjoined and restrained

from continuing to operate its mobile application the Tea App until it implements adequate data

security policies, procedures, and practices to safeguard user data to protect against the imminent

risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual

harassment and/or violence and abuse and sexual assault. *Denied for failure to meet*
*the requirements of La.CCP. arts 3603*
*& 3604.*

**IT IS FURTHER ORDERED** ~~that~~ because Plaintiffs are seeking protection from

domestic abuse, dating violence, stalking or sexual assault (among other protections), Plaintiffs

are relieved from the requirement to post security in this matter.

**IT IS FURTHER ORDERED** that Tea Dating Advice, Inc. show cause on the *4th* day of

*September*, 2025 at *1:30* a.m./p.m. ~~why Plaintiffs' temporary restraining order should not continue~~

*why* ~~and~~ a preliminary injunction should not issue enjoining Tea Dating Advice, Inc. from operating the

Tea App until it can demonstrate that it has implemented adequate data security policies,

procedures, and practices to safeguard user data to protect against the imminent risk of stalking,

VERIFIED
8/26/25

domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault.

New Orleans, Louisiana, this 25th day of August, 2025.

FILED
2025 AUG 22 PM 4: 09
CIVIL
DISTRICT COURT

_____
**JUDGE LORI JUPITER**

**PLEASE SERVE:**
TEA DATING ADVICE, INC.
Through The Louisiana Long-Arm Statute
On the Registered Agent for Service:
Legalinc Registered Agents, Inc.
500 N. Brand Boulevard, Suite 890
Glendale, California 91023

Rebecca Julian
VERIFIED
8/26/25