UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GABRIELLE KARAM, SAMANTHA STEVENS, and MEREDITH KARAM, individually and on behalf of all others similarly situated, <br><br> VERSUS <br><br> TEA DATING ADVICE, INC. | CIVIL ACTION NO.: 2:25-cv-01790 <br><br> SECTION: L <br><br> JUDGE: ELDON E. FALLON <br><br> MAGISTRATE: EVA J. DOSSIER |

**DEFENDANT TEA DATING ADVICE, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO STAY PROCEEDINGS, AND IN THE ALTERNATIVE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Tea Dating Advice, Inc. ("Defendant" or "Tea"), by and through its undersigned counsel, hereby submits this memorandum in support of its Motion to transfer this case to the United States District Court for the Northern District of California, where twelve other substantially similar putative class actions were filed against Defendant, and is where Defendant is headquartered. While Defendant's Motion is pending, all case deadlines, including Defendant's responsive pleading deadline, other motion practice and discovery should be stayed so as to preserve party and judicial resources, prevent prejudice to Defendant and preclude this action from advancing ahead of the first-filed actions in the Northern District of California. Alternatively, in the event the Court declines to transfer the instant action, this proceeding should be dismissed

- 1 -

altogether for lack of personal jurisdiction or, further in the alternative, stayed pending resolution of the first-filed actions in the Northern District of California.

# I.
# BACKGROUND.

Defendant operates a mobile application that allows women to share and crowdsource information about men they have dated or are considering dating (the "Tea App"). On July 25, 2025, Defendant learned that there was unauthorized access to a file storage location that contained records used to verify new users of the Tea App. That same day, a security researcher gained unauthorized access to a second cloud location and claimed access to over one million Tea App direct messages, some of which were reported to contain sensitive information (collectively these two events are referred to as the "Incident"). Defendant immediately launched an investigation and terminated external access to the relevant infrastructure. Tea also changed internal credentials to various components of Tea's network infrastructure, limiting access to a select few individuals. External cybersecurity consultants have validated these security measures.

On August 6, 2025, Plaintiffs Gabrielle Karam, Samantha Stevens, and Meredith Karam ("Plaintiffs") filed a Class Action Petition and Demand for Jury Trial (the "Complaint") in the Civil District Court for the Parish of Orleans. On September 2, 2025, Defendant timely removed the action to this Court. *See* Dkt. No. 1. In their Complaint, Plaintiffs allege that they downloaded and used the Tea App in or around May of 2025. *See* Compl., ¶¶ 1-3, 9. Without more factual support, Plaintiffs allege that because of the Incident, their "[Personally Identifiable Information ("PII") and sensitive user data [was] made public without their consent." *Id*., ¶12. Plaintiffs assert claims for Invasion of Privacy, Negligence, Breach of Contract, Unjust Enrichment, and violation of Federal and State Consumer Protection statutes. *Id.*, ¶¶ 37-72. Plaintiffs also seek to represent

a nationwide putative class, including "[a]ll U.S. citizens who downloaded and used the Tea App prior to and/or at the time of the [Incident.]" *Id.*, ¶ 20.

### A.  Litigation in the Northern District of California.

Prior to the filing of this case, multiple putative class actions were filed against Defendant in the Northern District of California arising out of the same Incident, the first of which was filed on July 28, 2025. *See Reyes v. Tea Dating Advice, Inc.*, 3:25-cv-06321-WHO (N.D. Cal.). Currently, including *Reyes*, there are a total of **twelve putative class actions** pending in the Northern District of California—all but three were filed prior to Plaintiffs' Complaint (collectively referred to as the "N.D. Cal. Actions"). *See Doe v. Tea Dating Advice, Inc. et al*, Case No. 3:25-cv-06325-WHO (N.D. Cal.); *Doe II v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06336-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06363-WHO (N.D. Cal.); *Jones v. Tea Dating Advice Inc.*, Case No. 3:25-cv-06376-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06433-WHO (N.D. Cal.); *Brown v. Tea Dating Advice Inc.*, Case No. 3:25-cv-06445-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06457-WHO (N.D. Cal.); *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06559-WHO (N.D. Cal.); *Tucker v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06669-WHO (N.D. Cal.); *Vargas v. Tea Dating Advice In*c., Case No. 3:25-cv-06691-WHO (N.D. Cal.); *Korennikova v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06722-WHO (N.D. Cal).

The N.D. Cal. Actions have been deemed related and have all been assigned to the Honorable William H. Orrick, III in the Northern District of California. A hearing on a Motion to Consolidate the N.D. Cal. Actions pending in the *Reyes* matter is scheduled for September 17, 2025 ("Motion to Consolidate"). *See Reyes v. Tea Dating Advice, Inc.*, 3:25-cv-06321-WHO (N.D. Cal.), Dkt. No. 26. Defendant filed a response to the Motion to Consolidate supporting

consolidation for pre-trial purposes since it would be in the interest of judicial economy and will eliminate duplicative discovery and motion practice. *Id.*, Dkt. No. 32.

As demonstrated in the table below, the N.D. Cal. Actions filed before this Complaint arise out of the same Incident, seek to certify the same nationwide class, and assert similar and overlapping claims:

| Case Name, Number and Filing Date: | Class Definition: | Claims: |
|---|---|---|
| *Reyes v. Tea Dating Advice, Inc.*, 3:25-cv-06321-WHO (N.D. Cal.), filed July 28, 2025 ("*Reyes*").[1] | "All individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before July 25, 2025." *Reyes* Compl., ¶ 26. | • Negligence;<br>• Breach of Implied Contract;<br>• Breach of the Implied Covenant of Good Faith and Fair Dealing; and<br>• Violation of California Unfair Competition Law.<br><br>*Reyes* Compl., ¶¶ 74-121. |
| *Doe v. Tea Dating Advice, Inc. et al*, Case No. 3:25-cv-06325-WHO (N.D. Cal.), filed July 28, 2025 ("*Doe I*").[2] | "All persons residing in the United States whose Personally Identifiable Information ("PII") was exposed in the Tea data breach announced on or about July 25, 2025." *Doe I* Compl., ¶ 78. | • Negligence;<br>• Negligence Per Se;<br>• Invasion of Privacy by Intrusion<br>• Breach of Implied Contract;<br>• Violation Of The Driver's Privacy Protection Act;<br>• Violation of California Unfair Competition Law;<br>• Violation of the California Consumer Records Act;<br>• Violation of the California Consumer Privacy Act; and<br>• Declaratory and Injunctive Relief<br><br>*Doe I* Compl., ¶¶ 90-183; 191-207. |

---

[1] The *Reyes putative* class action complaint is attached as <u>Exhibit A</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

[2] The *Doe I* putative class action complaint is attached as <u>Exhibit B</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

| **Case Name, Number and Filing Date:** | **Class Definition:** | **Claims:** |
|---|---|---|
| *Doe II v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06336-WHO (N.D. Cal.) filed July 29, 2025 ("*Doe II*").[3] | "All individuals whose Private Information was compromised in the Data Breach beginning on or about July 25, 2025." *Doe II* Compl., ¶ 117. | - Negligence;<br>- Negligence Per Se;<br>- Breach of Contract; and<br>- Unjust Enrichment.<br><br>*Doe II* Compl., ¶¶ 130-177. |
| *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06363-WHO (N.D. Cal.) filed July 29, 2025 ("*Doe III*").[4] | "All persons residing in the United States whose Personally Identifiable Information ("PII") was exposed in the Tea data breach announced on or about July 25, 2025." *Doe III* Compl., ¶ 77. | - Negligence;<br>- Negligence Per Se;<br>- Breach of Implied Contract;<br>- Invasion of Privacy/Public Disclosure of Private Facts; and<br>- Violation of the California Consumer Privacy Act.<br><br>*Doe III* Compl., ¶¶ 90-143. |
| *Jones v. Tea Dating Advice Inc.*, Case No. 3:25-cv-06376-WHO (N.D. Cal.) filed on July 30, 2025 ("*Jones*").[5] | "All persons whose Private Information was accessed and/or acquired in the Data Breach." *Jones* Compl., ¶ 96. | - Negligence;<br>- Negligence *Per Se*;<br>- Breach of Implied Contract;<br>- Unjust Enrichment; and<br>- Declaratory Judgment.<br><br>*Jones* Compl., ¶¶ 106-189. |

---

[3] The *Doe II* putative class action complaint is attached as <u>Exhibit C</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

[4] The *Doe III* putative class action complaint is attached as <u>Exhibit D</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

[5] The *Jones* putative class action complaint is attached as <u>Exhibit E</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

| Case Name, Number and Filing Date: | Class Definition: | Claims: |
|---|---|---|
| *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06433-WHO (N.D. Cal.) filed on July 31, 2025 ("*Doe IV*").[6] | "All persons residing in the United States whose Personally Identifiable Information ("PII") was exposed in the Tea data breach announced on or about July 25, 2025." *Doe IV* Compl., ¶ 88. | • Negligence;<br>• Negligence Per Se;<br>• Breach of Implied Contract;<br>• Invasion of Privacy/Public Disclosure of Private Facts; and<br>• Violation of the California Consumer Privacy Act.<br><br>*Doe IV* Compl., ¶¶ 101-154. |
| *Brown v. Tea Dating Advice Inc.*, Case No. 3:25-cv-06445-WHO (N.D. Cal.) filed on July 31, 2025 ("*Brown*").[7] | "All persons residing in the United States whose Private Information was compromised in the Data Breach." *Brown* Compl., ¶ 76. | • Negligence;<br>• Negligence *Per Se*;<br>• Unjust Enrichment; and<br>• Breach of Implied Contract.<br><br>*Brown* Compl., ¶¶ 88-168. |
| *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06457-WHO (N.D. Cal.) filed on July 31, 2025 ("*Doe V*").[8] | "All persons in the United States whose Private Information was compromised in the Defendant's Data Breach that occurred on July 25, 2025." *Doe V* Compl., ¶ 98. | • Negligence;<br>• Negligence *Per Se*;<br>• Breach of Implied Contract;<br>• Unjust Enrichment;<br>• Breach of Fiduciary Duty; and<br>• Declaratory and Injunctive Relief.<br><br>*Doe V* Compl., ¶¶ 113-179. |

---

[6] The *Doe IV* putative class action complaint is attached as <u>Exhibit F</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

[7] The *Brown* putative class action complaint is attached as <u>Exhibit G</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

[8] The *Doe V* putative class action complaint is attached as <u>Exhibit H</u>. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

| Case Name, Number and Filing Date: | Class Definition: | Claims: |
|---|---|---|
| *Doe v. Tea Dating Advice, Inc.*, Case No. 3:25-cv-06559-WHO (N.D. Cal.) filed on July 31, 2025 ("*Doe VI*").[9] | "All women residing in the United States whose Sensitive Information was exposed to unauthorized actors by way of the data breach(es) on or about July 25, 2025." *Doe VI* Compl., ¶ 67. | • Negligence;<br>• Breach of Implied Contract;<br>• Breach of Express Contract; and<br>• Violation of New York General Business Law.<br><br>*Doe VI* Compl., ¶¶ 79-121. |

## II.
## ARGUMENT

### A. This Case Should be Transferred to the Northern District of California pursuant to the "First to File" Rule

The first-to-file rule is a discretionary rule that permits a court to "decline jurisdiction over an action when a complaint involving the same parties and issues is pending in another federal court." *Murray v. Wilson*, 2008 WL 3498226, at *2 (E.D. La. Aug. 8, 2008) (Africk, J.). "The Fifth Circuit adheres to the general rule that the court in which an action is first-filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir. 1997); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) (stating the first-filed rule should be followed absent "compelling circumstances"). The rule stems from the recognition "that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local* 24, 751 F.2d 721, 728 (5th Cir. 1985). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to

---

[9] The *Doe VI* putative class action complaint is attached as Exhibit I. Defendant requests that the Court take judicial notice of this document in accordance with Federal Rule of Evidence 201(b)(2) and (c)(2).

- 7 -

avoid piecemeal resolution of issues that call for a uniform result." *Id*. at 729 (*citing Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)).

A second-filed court, faced with a motion to dismiss, stay, or transfer under the first-to-file rule, "must evaluate whether a substantial overlap exists between the two actions." *Cormeum Lab Servs., LLC v. Coastal Lab'ys, Inc.*, 2021 WL 5405219, at *3 (E.D. La. Jan. 15, 2021) (Morgan, J.). "To determine whether there is a substantial overlap between two actions, the court considers whether core issues are the same or whether much of the proof adduced would likely be identical." *Id.* (citing *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)); *see Excel*, 1996 WL 5708, at *6 ("In the absence of 'compelling circumstances,' the district court who gets the suit first should be one to decide the case"). Once it has been shown that the two actions substantially overlap, the court with the second-filed action should transfer the case to the court where the first-filed suit is pending. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999).

### 1. *The N.D. Cal. Actions Were Filed First.*

There is no genuine dispute that Reyes—filed on July 28, 2025, more than a week before this Complaint—constitutes the first-filed action. Moreover, nine additional putative class actions were filed in the Northern District of California after Reyes but still prior to the filing of this Complaint. Each of these actions substantially overlaps with the claims and allegations asserted by Plaintiff here.

### 2. *The Present Action and N.D. Cal. Actions "Substantially Overlap".*

*First*, there is sufficient overlap between the parties to invoke the first-to-file rule. It is not a requirement that the cases involve identical parties, rather, they only need to show that the parties are substantially similar. *See Save Power*, 121 F.3d at 951. Indeed, multiple courts have applied the first-to-file rule even where different actions include or omit additional defendants. *See Kohn*

*Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) ("the omission of [a defendant] from the present action does not defeat application of the first-to-file rule."); *Vertical Computer Sys., Inc. v. Interwoven, Inc.*, 2011 WL 13141016, at *2 (E.D. Tex. 2011) ("a party cannot circumvent the policies underlying the first-to-file rule by merely tacking on an additional defendant in a later, duplicative action."). And, in assessing the similarity of the plaintiffs in the class action contexts, courts compare the similarity of the proposed classes, *not* the class representatives. *See, e.g.*, *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (noting "the classes and not the class representatives, are compared"). Here, Plaintiffs—like those in the N.D. Cal. Actions—assert claims against the same Defendant, Tea Dating Advice, Inc., and seek to represent an identical nationwide class: all persons in the United States impacted by the Incident. *Compare Compl.* ¶ 20 *with Exhibit A* ¶ 26, *Exhibit B* ¶ 78, *Exhibit C* ¶ 117. This substantial similarity supports application of the first-to-file rule.

*Second*, the issues raised in this Complaint and those raised in the N.D. Cal Actions will substantially overlap because they allege substantially similar if not identical conduct arising from the same Incident over the same time period. Allowing separate actions to go forward on these allegations creates a risk of inconsistent rulings, as well as the "unavoidable duplication of effort in having separate courts work to arrive at the same decision." *White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 343 (S.D. Miss. 2008). Therefore, because "the issues raised by the cases substantially overlap," application of the first-to-file rule is proper and must be applied. *See, e.g., Save Power*, 121 F.3d at 951-52 (vacating the district court's judgment and remanding with instructions that the action be transferred to the first-filed court after noting that "[n]ot only do the issues 'substantially overlap,' but inconsistent rulings have already resulted."); *see also*

*e.g., Hardwick v. Factor*, 2011 WL 1831706, at *3 (S.D. Tex. May 9, 2011) (applying the first-to-file rule where "[t]his case and the Oklahoma case arise out of the same event" and "[a]ll the defendants in this lawsuit are also defendants in the Oklahoma action").

In sum, the "substantial overlap" between the N.D. Cal. Actions and the action at hand cannot be seriously questioned. The actions involve the same parties, the same factual allegations, and the same basic issues of law. It is clear that inconsistent rulings may result if the present Motion is denied. Moreover, given the early state of the case, if transfer occurs quickly, and consolidation is granted, Plaintiffs will have an opportunity to meaningfully contribute and be involved in the drafting of a consolidated class action complaint and management of the case moving forward. Therefore, based on the principle of comity, and to avoid inefficiency, wasted judicial resources, and inconsistent rulings, the instant action should be transferred to the Northern District of California where the first-filed suit is pending.

**B.      The 28 USC § 1404 Factors Also Support Transfer.**

Section 1404(a) of Title 28 of the United States Code authorizes a district court to transfer "any civil action to any other district or division where it might have been brought." Transfer under § 1404(a) is appropriate where it promotes "the convenience of parties and witnesses" and is "in the interest of justice." When applying the statute, the court undertakes a two-step analysis. First, the court must determine whether a civil action "might have been brought" in the destination venue. *Giving Hope, Inc. v. Nat'l Fire & Marine Ins. Co.*, 2025 WL 903139, at *1 (E.D. La. Mar. 25, 2025) (Zainey, J.) (cit. omitted). Second, courts assess whether convenience and the interest of justice require transfer to the requested forum. *Id.* Applying this analysis, this case should be transferred to the Northern District of California.

First, as Plaintiffs allege, Defendant is a Delaware corporation with its principal place of business in San Franciso, California. Compl. ¶ 6. Thus, this action could have been brought in

the Northern District of California.  Second, the convenience of the parties and witnesses weighs in favor of California.  Not only is California where Defendant is headquartered, it also is where the most relevant witnesses, documents, and other evidence related to the Incident likely are located.  These factors favor transfer.  Moreover, the Complaint does not identify any meaningful connection between Defendant or the Incident and the State of Louisiana, other than the fact that they reside and used the Tea App in Louisiana.[10]  Compl. ¶¶ 1-3.  Third, the "interest of justice" factor relates to the efficient administration of the court system, including that the parties could seek consolidation of the action with related cases.  *See, e.g., Taaffe v. Robinhood Markets, Inc.*, 2020 WL 13547887, at *2 (M.D. Fla. Apr. 13, 2020).  This factor also favors transfer because this case, if transferred to the Northern District of California, can and likely will be consolidated with the N.D. Cal. Actions.

Thus, this Court should exercise its discretion and transfer the matter to the Northern District of Georgia, notwithstanding the first-to-file rule.

C.     **This Court Lacks Personal Jurisdiction Over Defendant.**

Defendant raises lack of personal jurisdiction under Federal Rule 12(b)(2) in this motion only out of an abundance of caution in the event that failing to do so could constitute waiver of this defense. Personal jurisdiction is necessary for any judgment that imposes a personal obligation, such as a judgment for money damages.  *Ins. Corp. of Ireland, Ltd. v. Compagnie De Bauxites de Guinee*, 456 U.S. 694, 711 (1982).  A "lack of personal jurisdiction" is, therefore, a defense to any claim for relief.  Fed. R. Civ. P. 12(b)(2).  When a defendant moves to dismiss on these grounds, the plaintiff has the burden of establishing a prima facie case of personal jurisdiction

---

[10] To date, only *twenty-one residents* of Louisiana are in the current notice population, compared to more than 500 individuals in California.  Named Plaintiffs' PII ***has not*** been identified as part of the data involved in the Data Incident.

over the nonresident defendant. *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025). Consistent with due process, personal jurisdiction comes in two form—general and specific. *See Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024). As outlined below, Plaintiffs have not established that either apply to Defendant.

General personal jurisdiction applies only when a defendant is essentially at home—i.e., place of incorporation or principal place of business, "and any and all claims may be brought against a defendant wherever it is subject to such jurisdiction." *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). Defendant is not incorporated, nor does it maintain a principal place of business in Louisiana. . Compl. ¶ 6. Accordingly, Defendant is not subject to general personal jurisdiction in Louisiana.

"[S]pecific personal jurisdiction is narrower and attaches only when there is a sufficient connection between a defendant's forum-related contacts and a plaintiff's cause of action." *Shambaugh*, 91 F.4th at 372 (citing *Ford Motor Co.*, 592 U.S. at 359). In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (int. quot. and cit. omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 289-90 (2014). This case and all of Plaintiffs' claims arise out of a data security incident affecting Defendant's computer systems (i.e., the Incident). All of Defendant's alleged conduct at issue and purportedly giving rise to Plaintiffs' claims can be plausibly inferred from the Complaint to have occurred somewhere other than Louisiana. *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 788 (5th Cir. 2021) ("Merely running a website that is accessible in the forum state does not constitute the purposeful availment

required to establish personal jurisdiction under longstanding principles of due process."); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) (the lawsuit must arise from the nonresident website operator's ***purposeful targeting*** of the forum state). Other than being the location where Plaintiff's used the Tea App, Plaintiffs do not plead any factual allegations tying this Incident or their claims to Defendant's business activities in Louisiana nor that they received notification that their personally identifying information was part of the Data Incident.

Thus, on the face of the complaint, Plaintiffs does not meet their burden of showing that the Court may exercise specific jurisdiction over Defendant. If this case is not transferred, it should be dismissed under Rule 12(b)(2) due to this Court's lack of personal jurisdiction over Defendant. *See e.g., Suanphairin v. Ataya*, 2024 WL 4289573, at *10 (E.D. La. Sept. 25, 2024) (Long, J.) (dismissing complaint for lack of general or specific personal jurisdiction over defendant).

D.     **Defendant Requests That the Court Stay Case Deadlines Pending a Decision on the Motion to Transfer or Dismiss.**

Finally, Defendant moves to stay all case deadlines, including its responsive pleading deadline, other substantive motions and discovery, until the Court rules on the motion to transfer and motion to dismiss for lack of personal jurisdiction. "A district court has inherent authority to manage its docket, which includes the power to stay proceedings." *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 836, 840 (E.D. La. 2014) (Morgan, J.); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997) (Court has "broad discretion to stay proceedings as an incident to its power to control its own docket."). In determining whether a stay is proper, the district court should consider three factors: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact

consolidated. *See La. Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, 2009 WL 926982, at * 1 (E.D. La. Apr. 2, 2009) (Engelhardt, J.). When exercising its discretion, the Court is "guided by the policies of justice and efficiency." *Boudreaux v. Metro. Life Ins. Co.*, 1995 WL 83788, at *1 (E.D. La. Feb. 24, 1995) (Vance, J.).

A stay of this action would not unduly prejudice or present a disadvantage to Plaintiffs. Courts in this Circuit have consistently held that any potential prejudice to plaintiffs resulting from a stay of case deadlines is minimal. *See, e.g., Falgoust v. Microsoft Corp.*, 2000 WL 462919 (E.D. La. Apr. 19, 2000) (McNamara, J.) (stay of consideration of remand motion proper pending transfer to MDL); *Boudreaux v. Metropolitan Life Ins. Co.*, No. 95-138, 1995 WL 83788 (E.D. La. Feb. 24, 1995) (consideration of remand motion stayed pending transfer to MDL Court); *Balcombe-Anderson v. Tevas Pharms. USA, Inc.*, 2020 WL 8642150, at *2 (W.D. Tex. Nov. 22, 2020) (collecting cases). Here, discovery has not commenced, no scheduling conference has been held, and no trial date has been set. Moreover, Defendant submits that good cause exists for a stay, as it would be of limited duration and is not sought for purposes of delay or to cause prejudice.

Moreover, a stay would promote efficiency and economy of time and effort for the Court and parties, as the Court may ultimately transfer this case to the Northern District of California, where it will likely be consolidated with the N.D. Cal. Actions. *See Par. of Jefferson v. Exxon Mobil Corp.*, 2018 WL 2873805, at *3 (E.D. La. June 11, 2018) (Brown, J.) ("[A] stay is advisable for the additional reason that the interests of judicial economy will be served by a temporary stay, and the risk of inconsistent rulings in related cases … will be minimized."). If that happens, any pretransfer motions practice or other case management efforts here would likely be rendered moot. Accordingly, as in the present case, the court may stay all or part of the proceedings to conserve

judicial resources and promote the interests of justice. *See e.g., Elham v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 4219745, at *3 (S.D. Tex. Sept. 17, 2024)

## III.
## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court transfer this action to the United States District Court for the Northern District of California or dismiss this action for lack of personal jurisdiction. Defendant also respectfully requests that the Court stay all case deadlines pending its decision on the motion to transfer or dismiss, and in the event the Court denies this motion, extend Defendant's current deadline to respond to the Complaint by one week from the date of the Court's order.

Respectfully submitted this 2nd day of September, 2025.

By: */s/James M. Garner*
JAMES M. GARNER (#19589)
STUART D. KOTTLE (#37194)
KAYLYN B. HANDY (#38673)
SHER GARNER CAHILL RICHTER
 KLEIN & HILBERT, L.L.C.
909 Poydras Street, Twenty-Eighth Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
E-mails: jgarner@shergarner.com
skottle@shergarner.com
khandy@shergarner.com

*Attorneys for Defendant Tea Dating Advice, Inc.*