UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GABRIELLE KARAM, SAMANTHA STEVENS, and MEREDITH KARAM, individually and as representatives of all those similarly situated,<br><br>VERSUS<br><br>TEA DATING ADVICE, INC. | CIVIL ACTION NO. 2:25-cv-01790<br><br>SECTION "L"<br><br>JUDGE ELDON E. FALLON<br><br>MAG. JUDGE EVA J. DOSSIER |

**NAMED PLAINTIFFS' OPPOSITION TO DEFENDANT TEA DATING ADVICE, INC.'S MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO STAY PROCEEDINGS, AND IN THE ALTERNATIVE, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Gabrielle Karam, Samantha Stevens, and Meredith Karam ("Named Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), by and through undersigned counsel, respectfully submit this memorandum in opposition to the motion by Tea Dating Advice, Inc. ("Defendant" or "Tea") to transfer venue to the Northern District of California ("NDCA"). Defendant has failed to meet the heavy burden required to demonstrate that the NDCA is the proper venue for this suit. The first-to-file rule does not apply because the claims here are broader and distinct from those pending in California. Even if some overlap existed, compelling circumstances—including the convenience of witnesses, the location of the Plaintiffs and supporting evidence, and Louisiana's strong public interest—demonstrate that transfer is unwarranted. Finally, Defendant's purposeful contacts with Louisiana establish personal jurisdiction in this Court. Named Plaintiffs' choice to file this action in their home state of Louisiana, where their harm occurred, is entitled to significant deference and should not be disturbed. Accordingly, this action should remain in the Eastern District of Louisiana, and the Court should deny Defendant's motion in its entirety.

## FACTS

Defendant operates a mobile application, the "Tea App," that it advertised as a safe space for women to exchange information about men before going on dates with them. In direct contradiction to its stated and advertised purpose that "[w]omen should never have to compromise their safety while dating," Defendant engaged in fraudulent and negligent practices that allowed for its users' sensitive and highly personal data to be placed in the hands of those seeking to harm them.[1]

At the time that Named Plaintiffs filed this lawsuit, Defendant's privacy policy, which has since been updated, fraudulently claimed that users' verification images were "securely processed and stored only temporarily and will be deleted immediately following the completion of the verification process."[2] In truth, Defendant stored at least 13,000 verification images unencrypted and in an outdated storage bucket that was not even protected by a password. This fraud and negligence led to a massive data breach on July 25, 2025 (the "First Breach"). The First Breach was comprised of data that included users' photographs, drivers' licenses, and home addresses. As a direct result of the negligent storage of Tea App users' personally identifiable information ("PII"), users of the infamous image board, 4-chan, created and spread through the internet interactive maps showing the geolocation coordinates and personal images of Tea App users throughout the United States.

On July 26, 2025, only a day after the First Breach, Defendant advertised that it had received millions of new requests to join the Tea App. Then, only three days after the First Breach, on July 28, 2025, another breach (the "Second Breach") occurred. This breach was even more

---

[1] Teaforwomen, https://www.teaforwomen.com/about, (last accessed 9/5/25).
[2] Nationallawreview, https://natlawreview.com/article/safest-space-spill-tea-dating-safety-app-targeted-massive-data-breach#:~:text=To%20sign%20up%20for%20this,secure%20%5Bits%5D%20systems.%E2%80%9D, (last accessed 9/5/25).

invasive and harmful than the First Breach. The Second Breach allowed unauthorized access to millions of private messages sent between Tea App users. These messages reportedly contained sensitive personal information about things like abortions, sexual assault, and cheating partners.

Despite the harm Defendant caused its users to experience, on July 30, 2025, merely five days after the First Breach, Defendant posted on Instagram that it had spent resources to expand its approval team and had accepted over 800,000 new users in a 24-hour period. No announcement was made as to beefing up the security of the app itself

Defendant experienced yet another breach on August 19, 2025 (the "Third Breach," together with the First Breach and the Second Breach, the "Breaches"), obviously having ignored the lessons it should have learned from the First and Second Breaches. The Third Breach exposed the personal information of the women Defendant paid to promote the Tea App. This breach, while harming fewer people than the First and the Second Breaches, provides the greatest illustration of Defendant's negligence. According to 404 Media, all a hacker had to do to access the information was add "/admin" to the end of the Tea App site's URL. While this oversight is shocking, it is hardly surprising.

Tea has consistently put its own profits over its users' protection and, without court intervention, will continue to do so.  When 404 Media made Tea aware of the Third Breach, instead of apologizing or addressing its glaring security issues, a Tea spokesperson bragged about the 100,000 new women joining the app each day, bringing the number of users of the Tea App to over seven million.

On account of Defendant's fraud and negligence, Named Plaintiffs and the Class have suffered significant harm, including invasion of privacy, emotional distress, cyberbullying, an increased risk of identity theft, the loss of their PII, further risk of data exposure and misuse, the

imminent risk of stalking, domestic abuse, dating violence, and/or the threat of physical and sexual harassment and/or violence and abuse and sexual assault.

Because of Defendant's deliberate advertising and outreach to young women in this State, Named Plaintiffs each downloaded and used the Tea App in the state of Louisiana. Defendant purposefully availed itself of the privilege of conducting activities in Louisiana, thereby invoking the benefits and protections of Louisiana law. As will be discussed further below, prior to the Breaches, Defendant was made aware that the Tea App was causing issues within a small Louisiana community. For the aforementioned reasons, Defendant could, and should have, reasonably anticipated being hauled into a Louisiana court. Because of Defendant's contacts with Louisiana and its knowledge of the harm it had already caused in that small Louisiana community, and because of Tea's purposeful availment of Louisiana's benefits or protections, the Due Process Clause standard, the minimum contacts rule, is satisfied. Defendant being brought into court in Louisiana does not insult the traditional notions of fair play and substantial justice.

## **THE LEGAL STANDARDS FOR TRANSFERING VENUE: "THE CONVENIENCE OF PARTIES AND WITNESSES," AND "THE INTEREST OF JUSTICE"**

"In making a determination of whether a motion to transfer venue is proper, we turn to the language of § 1404(a), which speaks to the issue of 'the convenience of parties and witnesses' and to the issue of 'in the interest of justice.'" *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). In evaluating the convenience of parties and witnesses in a particular venue, the Fifth Circuit has determined that the private interests of the parties and witnesses should be balanced with public interest factors. *Id.* In *Volkswagen*, the Court held that the private factors to be evaluated are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

4

practical problems that make trial of a case easy, expeditious and inexpensive" *Id.* There, they also held that the four public factors to weigh are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *Id.*

Finally, "[w]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiffs' choice should be respected." *Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 636 (E.D. Tex. 2011).

## ARGUMENT

### A. The First-To-File Rule Is Inapplicable To This Case.

In its Motion, Tea argues that the first-to-file rule of judicial comity requires the transfer of this case to the NDCA. The first-to-file rule is a doctrine that's purpose is to promote judicial efficiency by favoring the first-filed case when substantially overlapping lawsuits involving similar parties and issues are pending in two different federal courts. The first-to-file rule is not absolute, however, and in the underlying litigation, is neither required nor proper. While the first-to-file rule "should not be regarded lightly," it is not a "rigid and inflexible rule to be mechanically applied, but rather is to be applied with a view to sound judicial administration." *Murray v. Wilson*, No. CIV.A. 08-2005, 2008 WL 3498226, at *2 (E.D. La. Aug. 8, 2008) (citing *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir.1982)). The factors guiding the rule's application are ultimately "equitable in nature," and lower courts are left an "ample degree of discretion." *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)).

5

Factors relevant to "substantial overlap" analysis include whether "the core issue" in each case is the same and whether "much of the proof adduced ... would likely be identical." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (citation omitted) (alterations in original). Courts also consider the extent to which the cases involve the same parties. *See Save Power*, 121 F.3d at 950–51. "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 631 (W.D. Tex. 2018) (citing *Sweet Little Mexico Corp.*, 665 F.3d at 678); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997).

This litigation does not "substantially overlap" with the NDCA actions because the claims here are qualitatively and quantitatively different. The NDCA actions, as Defendant concedes, focus on a narrow set of common law causes of action; they primarily allege negligence, negligence per se, unjust enrichment, and breach of contract arising from alleged failures to secure user data. [*See* R. Doc. 3-1 at 4-7]. While some of the complaints that have now been consolidated in the NDCA include statutory protections, none of them include as comprehensive a list of consumer protection statutes as does the case before this Court. The core issues in the NDCA cases are whether Defendant exercised reasonable care in protecting user data under common-law principles.

Plaintiffs here, by contrast, allege causes of action that are not present in the NDCA complaints, including invasion of privacy under Article I, § 5 of the Louisiana Constitution and parallel constitutional provisions in other states, as well as violations of the Louisiana Unfair Trade Practices and Consumer Protection Act, La. Stat. Ann. § 51:1401, and a broad array of nationwide

6

state consumer protection statutes. These are distinct legal theories reflecting state-specific rights and duties, not duplicative of negligence, unjust enrichment, or contract claims.

None of the NDCA cases allege violations of Plaintiffs' right to privacy arising under the various state constitutions, including under Article 1, § 5 of the Louisiana Constitution, or state consumer protection laws (other than California). [*See* R. Doc. 3-1 at 4-7], including the following illustrative State-specific consumer protection laws:

a. Alabama Unlawful Trade Practices Act, AL ST § 8-19-5, et seq.;
b. Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471, et seq.
c. Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1522;
d. Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107–108;
e. California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.;
f. California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.;
g. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(1);
h. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110b, et seq.;
i. Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2513, et seq.;
j. Delaware Deceptive Trade Practices Act, Del. Code Ann. Tit. 6, §§ 2532(5) and (7);
k. Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq.
l. Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. §§ 480-2(a), et seq.;
m. Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7), and (12), et seq.;
n. Idaho Consumer Protection Act, Idaho Code Ann. §§ 48-603, et seq.;
o. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. §§ 505/2, et seq.;
p. Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. §§ 510/2, et seq.;
q. Indiana Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-3(a), (b)(1), and (2), et seq.;
r. Iowa Consumer Fraud Act, Iowa Code §§ 714H.3 and 714H.5, et seq.;

s.   Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-626(a) and (b)(1)(A), (D) and (b)(3), et seq.;

t.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.170(1) and (2), et seq.;

u.   Louisiana Unfair Trade Practices Act, La. Stat. Ann. § 51:1401, et seq.;

v.   Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, § 207, et seq.;

w.   Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, § 1212(1)(E) and (G), et seq.;

x.   Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301(1), (2)(i)-(ii),(iv), (5)(i), and (9)(i), et seq.;

y.   Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2(a), et seq.;

z.   Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.903(1)(c), (e), (s), and (cc), et seq.;

aa.  Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7), and (13), et seq.;

bb.  Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd. 3(A);

cc.  Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, et seq;

dd.  Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, et seq;

ee.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. §§ 30-14-103;

ff.  Nebraska Consumer Protection Act, Neb. Rev. Stat. Ann. § 59-1602;

gg.  Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. Ann. § 87-302(A)(5) and (7);

hh.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(V) and (VII);

ii.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2;

jj.  New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7), (14), and 57-12-3;

kk.  Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0915(5) and (7);

ll.  New York Business Law, N.Y. Gen. Bus. Law § 349(A);

mm.  North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1.1(A);

nn.  North Dakota Unlawful Sales or Advertising Practices Law, N.D. Cent. Code § 51-15-02;

oo. Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A) and (B)(1) and (2);

pp. Oklahoma Consumer Protection Act, Okla. Stat. Ann. § 753(5), (7), and (20);

qq. Oklahoma Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78, § 53(A)(5) and (7);

rr. Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.608(1)(E), (G), and (U);

ss. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-2(4)(V), (VII), (XXI), and 201-3;

tt. Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(V), (VII), (XII), (XIII), and (XIV);

uu. South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq;

vv. South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1);

ww. Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-101, et seq;

xx. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.46(A), (B)(5) and (7);

yy. Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-4(1) and (2)(A), (B), and (I);

zz. Vermont Consumer Fraud Act, 9 Vt. Stat. Ann. Tit. 9, § 2453(A);

aaa. Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, et seq;

bbb. Washington Consumer Protection Act, Wash. Rev. Code RCW §§ 19.86.010, et seq.;

ccc. West Virginia Consumer Credit and Protection Act, W. Va. Code Ann. § 46A-6-104;

ddd. Wisconsin Deceptive Trade Practices Act (and Consumer Act), Wis. Stat. § 100.18, et seq; and

eee. Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii), and (vv).

The foregoing list accentuates that the underlying litigation involves claims far wider than those pending in the NDCA. The breadth of state-specific claims asserted in this case, as detailed in Plaintiffs' complaint, underscores that this is not duplicative of the NDCA lawsuits but a far broader action, addressing distinct rights and remedies. Where the claims alleged are vastly

9

different, there can be no substantial overlap. *See Sweet Little Mexico*, 665 F.3d at 678 (overlap inquiry turns on whether "the core issue" is the same).

Because Plaintiffs' claims extend far beyond the limited negligence, unjust enrichment, and contract theories asserted in California, the required substantial overlap does not exist. This Court therefore need not defer to the California filings, and the first-to-file rule has no application here.

Note, however, that even if this Court were to determine there is a substantial overlap between this case and those pending in the NDCA, the transfer of this case remains subject to the discretion of this court. "[W]hen two cases substantially overlap ..., courts may exercise their discretion and decline to apply the rule based on 'compelling circumstances.'" *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018); citing to *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). There, the Court noted that the Fifth Circuit had been silent on what constitutes a compelling circumstance but has "endorsed use of the convenience factors in *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983)." *Id.* In *Mission Insurance,* the Court ruled in favor of the second-filed case based on the convenience factors. 706 F.2d at 602–03. Accordingly, the analysis turns to the convenience factors, which demonstrate that compelling circumstances weigh against transfer in this case.

**B. The Convenience Factors Support Declining To Apply The First-To-File Rule And Keeping The Litigation In Louisiana.**

In determining whether transfer is warranted, courts evaluate both the private and public convenience factors. The private factors address the location of evidence, witnesses, and the practical burdens of trial, while the public factors concern broader systemic and community interests such as court congestion, local interest, and familiarity with governing law. Defendant's

10

motion barely acknowledges these factors, much less applies them, but they are the touchstone of the analysis, and they weigh heavily against transfer.

### a. The Private Convenience Factors

The private convenience factors outlined above support maintaining this action in the Eastern District of Louisiana. First, for the "relative ease of access to sources of proof," "a court looks to where documentary evidence, such as documents and physical evidence, is stored." Cub Club Inv., LLC v. Apple, Inc., No. 6-20-CV-00856-ADA, 2021 WL 12300180, at *2 (W.D. Tex. Sept. 7, 2021); citing to *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008). Here, much of the evidence is located on the internet, and can be accessed digitally and with great ease from Louisiana. The access to sources of proof in California is no easier than access in Louisiana. In fact, the Named Plaintiffs and the equipment they used to access the Tea App, only to be defrauded by means of the negligence of Defendant, are all located in Louisiana, as are all of the Named Plaintiffs' fact witnesses. The Supreme Court has held that a moving party must "describe with specificity the evidence they would not be able to obtain if trial were held in the [alternate forum]." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 258, 102 S. Ct. 252, 267, 70 L. Ed. 2d 419 (1981). Defendant has not done that here; it has not described any evidence with specificity that it would not be able to obtain if trial were held in the Eastern District of Louisiana.

Next, with regard to "the availability of compulsory process to secure the attendance of witnesses," Defendant claims, without support, that the convenience of the parties and witnesses favor California. "Generally, in a venue transfer analysis, the most important factor considered is whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed,* 90 F.Supp.2d at 774. Further, the convenience of non-party witnesses weighs more

11

heavily in favor of transfer than the convenience of party witnesses." *Overson v. Berryman Prods.*, 461 F. Supp. 2d 537, 540 (E.D. Tex. 2006).

Defendant neglected to report to the court in its Motion to Transfer Venue that, according to its LinkedIn page, three of its employees live in Brazil, two live in India, and only the Chief Executive Officer and Social Media Manager live in California.[3] Including Named Plaintiffs, eight of the ten would-be party witnesses reside outside of California, making California *more* inconvenient to the party witnesses than Louisiana. As for non-party witnesses, including friends and family of the Named Plaintiffs who have been witness to the facts of the breaches and the mental distress that has resulted from Defendant's fraud and negligence, convenience lies in the Eastern District of Louisiana, not all the way across the country in California.

"[T]he moving party must do more than make a general allegation that certain key witnesses are needed. The movant must specifically identify the key witnesses and outline the substance of their testimony." *Hupp v. Siroflex of Am., Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994) (citing *Continental Airlines,* 805 F.Supp. at 1396.). Here, Defendant's claim that the most relevant witnesses are in California lacks any specificity at all. Instead, Defendant asserts that the relevant witnesses are "likely" in California. [*See* R. Doc. 3-1 at 11]. Furthermore, the three Named Plaintiffs in this suit outnumber the Defendant's employees who reside in California, and the fact witnesses to the damage caused by Tea on the these Named Plaintiffs are even more numerous and all reside in Louisiana. Thus, the most important factor to venue transfer, the availability and convenience of the witnesses, weighs strongly in favor of Louisiana remaining the venue.

The third and fourth private convenience factors, "the cost of attendance for willing witnesses" and "all other practical problems that make trial of a case easy, expeditious and

---

[3] LinkedIn, https://www.linkedin.com/company/tea-dating-safety-for-women/people/?facetGeoRegion=102095887, (last accessed 9/3/25).

inexpensive", also weigh in favor of Louisiana as the proper venue. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d at 204–05. However, "[w]hen a particular witness will be required to travel 'a significant distance no matter where they testify,' then that witness is discounted for purposes of the 100–mile–rule analysis." *Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 648–49 (E.D. Tex. 2013); citing to *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009).

  The Named Plaintiffs are three young women without great means to travel to California to try to correct the wrongs caused by Tea. Conversely, Defendant's two California employees appear to be more than financially stable. The Defendant's CEO, Sean Cook, worked as the Director of Product Management at Salesforce, a fortune 500 company, prior to developing the Tea App.[4] Defendant's Social Media Manager, Daniella Szetela, is the CEO of her of own seemingly successful company.[5] Thus, the Named Plaintiff, and their willing witnesses, should be given greater deference than Defendant's Californian, Brazilian, or Indian employees.

  Finally, a trial of this case in Louisiana, where the Named Plaintiffs, their equipment used to access the Tea App, and witnesses to the damage suffered are, is a superior option to the NDCA as pertains to ease, expeditiousness, and costs.

  Every private convenience factor weighs against transfer. The sources of proof are readily accessible in Louisiana, the key fact witnesses overwhelmingly reside here, and the cost and burden of attendance fall far more heavily on the Plaintiffs than on Defendant's executives and employees abroad. Defendant has failed to identify with any specificity the witnesses or evidence

---

[4] LinkedIn, https://www.linkedin.com/in/seancook1/, (last accessed 9/3/25).
[5] LinkedIn, https://www.linkedin.com/in/daniella-szetela/, (last accessed 9/3/25).

that would purportedly favor California, relying instead on speculation and omission. The law requires more, and the facts make clear that Louisiana, not California, is the more convenient and appropriate forum for this litigation.

### b. The Public Convenience Factors

The public convenience factors also weigh in favor of Louisiana as the venue for this class action litigation. First, as to "the administrative difficulties flowing from court congestion," court congestion in Louisiana is much less of a concern than it is in the NDCA. In fact, the Eastern District of Louisiana boasts the third fastest resolution time for civil trials.[6] To illustrate, the average number of months between filing a lawsuit and its trial in the Eastern District of Louisiana is 24.5 while, in the NDCA, the average time is 37.6,[7] over an entire year longer .

Second, "the local interest in having localized interests decided at home" here is great. "This factor has dual considerations: a court may look to whether the local community has an interest in the outcome of the issue before it and whether it would be fair to burden that community with jury duty." *ESI/Emp. Sols., L.P. v. City of Dallas*, No. 4:19-CV-570-SDJ, 2019 WL 5684668, at *5 (E.D. Tex. Oct. 31, 2019) There are likely thousands of Louisianans who have been impacted by Defendant's fraud and negligence. Furthermore, according to a former employee of the Defendant, the Tea App went viral in a small Louisiana town and led to online fighting and racism in the town. Despite this employee's concerns, Tea's CEO Sean Cook brushed off the gravity of the effect of the Tea App on this small town, reportedly telling her "let them say whatever they

---

[6] LAED, https://www.laed.uscourts.gov/news/eastern-district-louisiana-was-third-fastest-civil-trial-court-country-2024-averaging-164, (last accessed 9/5/25).
[7] USCourts, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.uscourts.gov/sites/default/files/document/fcms_na_distcomparison0630.2025.pdf, (last accessed 9/5/25).

want."[8] Finally to this point, there is nothing to suggest that this community would be burdened with jury duty,

Lastly, as to the "the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or the application of foreign law," the Named Plaintiffs themselves bring claims under the Louisiana Unfair Trade Practices Act which, undoubtedly, this Court has greater knowledge of than the NDCA. There is no indication or support to suggest that the NDCA has greater knowledge of the other State statutes under which the Named Plaintiffs have sued or brought on behalf of similarly-situated Class Members, or that transferring this case to the NDCA would help avoid unnecessary problems of conflict of laws or the application of foreign law.

The public convenience factors strongly reinforce that this case belongs in Louisiana. This District not only offers a faster and more efficient path to trial but also has a direct and compelling interest in adjudicating claims brought by Louisiana residents who were harmed here. Defendant has offered no evidence that California courts are better positioned to resolve these matters, and nothing in the record suggests that transfer would alleviate practical and legal complications. The public interest is best served by keeping this action in the Eastern District of Louisiana.

### C. This Court Has Jurisdiction Over Defendant and This Case.

Defendant proclaims to raise personal jurisdiction "only out of an abundance of caution in the event that failing to do so could constitute waiver of this defense." [*See* R. Doc. 3-1 at 11]. In actuality, Defendant's contacts with Named Plaintiffs and the State of Louisiana grant this Court jurisdiction over this suit. "A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that

---

[8] 404Media, https://www.404media.co/how-teas-founder-convinced-millions-of-women-to-spill-their-secrets-then-exposed- them-to-the-world/, (last accessed 9/4/25).

defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution." *Marinor Assocs., Inc. v. MV PANAMA EXPRESS*, No. CIV. A. H-08-1868, 2009 WL 4722238, at *1 (S.D. Tex. Dec. 9, 2009). Under the legal standard of minimum contacts, which originates from *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), Defendant has sufficient minimum contacts with Louisiana to justify the exercise of specific jurisdiction. On information and belief, Defendant advertised to Louisiana citizens through social media platforms like Instagram and TikTok. Furthermore, Defendant was made aware prior to the Breaches that its Tea App was causing issues within a Louisiana community but neglected to do anything to remedy those issues. Instead, Defendant continuously and purposefully conducted business in the State of Louisiana to the detriment of its citizens.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant Tea Dating Advice, Inc.'s Motion to Transfer Venue to the United States District Court for the Northern District of California and to Stay Proceedings, and in the Alternative Motion to Dismiss for Lack of Personal Jurisdiction. The first-to-file rule does not apply because the claims here are broader and distinct from those pending in California. Even if some overlap existed, compelling circumstances—including the convenience of witnesses, the location of the Plaintiffs and evidence, and Louisiana's strong public interest—demonstrate that transfer is unwarranted. Finally, Defendant's purposeful contacts with Louisiana establish personal jurisdiction in this Court.

Accordingly, this action should remain in the Eastern District of Louisiana, and the Court should deny Defendant's motion in its entirety.

Respectfully submitted,

s/ Lynn E. Swanson
Gladstone N. Jones, III (LA Bar No. 22221)
Lynn E. Swanson (LA Bar No. 22650)
Kevin E. Huddell (LA Bar No. 26930)
Thomas F. Dixon (LA Bar No. 38952)
Rosa E. Acheson (LA Bar No. 39775)
**JONES SWANSON HUDDELL LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by electronic mail and/or regular mail.

/s/ Lynn E. Swanson
Lynn E. Swanson
