UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GABRIELLE KARAM, SAMANTHA STEVENS, and MEREDITH KARAM, individually and on behalf of all others similarly situated, | CIVIL ACTION NO.: 2:25-cv-01790 |
| | SECTION: L |
| VERSUS | JUDGE: ELDON E. FALLON |
| TEA DATING ADVICE, INC. | MAGISTRATE: EVA J. DOSSIER |

**DEFENDANT TEA DATING ADVICE, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO STAY PROCEEDINGS, AND IN THE ALTERNATIVE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Tea Dating Advice, Inc. ("Defendant" or "Tea"), by and through its undersigned counsel, hereby submits this Reply in support of its Motion to transfer this case to the United States District Court for the Northern District of California, where twelve other substantially similar putative class actions were filed against Defendant, and where Defendant is headquartered, or to dismiss or stay in the alternative ("Motion").

**ARGUMENT**

**A.     This Case Should be Transferred to the Northern District of California Pursuant to the "First-to-File" Rule.**

There is a strong presumption in favor of the forum where the first suit was filed under the first-to-file rule. *See e.g., W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985); *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir.1971). Plaintiffs

do not—and cannot—dispute that this action and the earlier-filed N.D. Cal. Actions arise from the *same core issues* since they all arise out of the same underlying Incident, involve substantially overlapping factual allegations, and will rely on largely the same body of evidence. Courts and the Judicial Panel on Multidistrict Litigation routinely find substantial overlap between actions brought by different plaintiffs seeking to represent the *same* class of persons in response to a data breach. *See* Mot. at 4-7 (comparing class definitions); *see also McGarry v. Delta Air Lines, Inc.*, 2018 WL 6928799, at *5 (N.D. Ga. Nov. 20, 2018) (finding similarity of issues where "[t]he named plaintiffs in both actions seek to represent the same class of persons whose personal information was compromised as a result of the same data breach."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (U.S. Jud. Pan. Mult. Lit. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections."); *Mullinix v. US Fertility, LLC*, 2021 WL 4935976, at *3 (C.D. Cal. June 8, 2021) ("Transfer … will minimize the risk of inconsistent judgments that affect the class members whose personal information was affected by the 2020 data breach."); *Mulvey v. Vertafore, Inc.*, 2021 WL 3089386, at *3 (N.D. Tex. July 22, 2021) (The "overlapping parties, claims, and facts means that whatever court hears these two cases will grapple with the same core issues.") (int. quot. and cit. omitted).

Indeed, to determine if transfer is warranted under the first-to-file rule, courts look to whether the core issues are the same. *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). Plaintiffs' Opposition, however, fails to meaningfully analyze or address this point focusing instead on the causes of action not the key underlying facts. Even a cursory review of the pleadings reveals that this case and the first-filed N.D. Cal. Actions raise the same core issues: they concern the same conduct, by the same defendant, resulting in the same types of

alleged harms.  For example, both Plaintiffs' Complaint and the complaint in *Reyes v. Tea Dating Advice, Inc.*, 3:25-cv-06321-WHO ("Reyes Complaint") allege that Defendant suffered cyberattacks in July 2025 through which unauthorized third parties accessed user data from the Tea App.  *Compare* Compl., Preliminary Statement, *with* Reyes Compl., ¶ 2.  Both identify and allege that the Incident includes direct messages sent by users of the Tea App.  *Compare* Compl., ¶ 5, *with* Reyes Compl., ¶ 5.  Both actions are brought as putative class actions, seeking relief on behalf of all individuals in the United States whose data was affected by the Incident.  *Compare* Compl., ¶ 20, *with* Reyes Compl., ¶ 26.  Both allege that Defendant breached a duty to safeguard user data.  *Compare* Compl., ¶ 51, *with* Reyes Compl., ¶ 81.  Both assert the existence (and breach) of implied contracts obligating Defendant to safeguard user data.  *Compare* Compl., ¶¶ 61–62, *with* Reyes Compl., ¶¶ 100, 105.  Both claim that Defendant's "inadequate security" practices constitute a deceptive business practice.  *Compare* Compl., ¶¶ 71–72, *with* Reyes Compl., ¶ 117.  Similarly, Plaintiffs' Complaint and the complaint in *Doe v. Tea Dating Advice, Inc. et al.*, Case No. 3:25-cv-06325-WHO (N.D. Cal.) ("Doe I Compl.") allege that the Incident resulted in an invasion of privacy.  *Compare* Compl., ¶¶ 39–40, *with* Doe I Compl., ¶¶ 225–227.

As demonstrated above, Plaintiffs in the present action and plaintiffs in the prior-filed N.D. Cal. Actions will use the same core factual allegations to support their claims.  Central to each action are the assertions that Defendant made about its platform, the data it collected (or did not collect), its users' privacy, and that Defendant failed to implement reasonable security measures that could have prevented the Incident.  To establish liability, Plaintiffs in both cases will necessarily rely upon the same witnesses, the same technical evidence, and the same inquiry into Defendant's statements, policies, systems and security practices.  *Compare* Compl., Preliminary Statement, *with Doe I* Compl., ¶ 11, *and Reyes* Compl., ¶ 96.

In short, the factual overlap is not superficial, it is foundational. The same conduct of Defendant and substantially similar evidence regarding the alleged Incident are at issue ***across all actions***. Plaintiffs' attempt to distinguish this case ignores the reality that the litigation involves substantially similar claims proceeding on a shared factual track. Allowing duplicative litigation to continue in separate courts would not only waste judicial resources but also risk inconsistent rulings—precisely the concerns the first-to-file rule is designed to prevent. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (cit. omitted).

Plaintiffs fail to address the substantial overlap in core facts and legal issues and instead try to sidestep the first-to-file rule by pointing to the presence of certain causes of action in their Complaint that are not asserted in the N.D. Cal. Actions. *See* Opp. at 6-10. The mere inclusion of different claims applied to the same factual predicate does not negate the applicability of the first-to-file rule, nor do Plaintiffs cite any authority suggesting otherwise. If the rule could be avoided simply by asserting different causes of action, its purpose would be undermined entirely. That is precisely why courts look beyond the specific legal theories asserted and focus instead on whether the cases share the same "core issues." *See Int'l Fid. Ins. Co.*, 665 F.3d at 678. As outlined above, the factual foundation of both actions is identical: the same defendant and the same Incident.[1]

Plaintiffs' position is not only legally unsupported but is also contrary to well-established precedent. Courts have consistently held that substantial overlap exists even where the second-filed case includes additional or different causes of action. *See Kolb v. Conifer Value-Based Care*,

---

[1] To the extent there are differences, those can be addressed by the transferee judge in the Northern District Of California. Judge Orrick already has considered such an approach in response to X-Corp.'s opposition to the consolidation. *See Reyes v. Tea Dating Advice, Inc.*, 3:25-cv-06321-WHO, Dkt. No. 42, Order Granting Motion to Consolidate and Setting Briefing Schedule ("I will consider a separate schedule or other appropriate measures to ensure X- Corp. is able to move swiftly to test the allegations asserted against it.")

LLC, 2023 WL 8244293, at *4 (N.D. Tex. Nov. 27, 2023) ("The causes of action asserted do not have to be identical for there to be substantial overlap between the cases."); *Brocq v. Lane*, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017) ("Even when the second case presents claims absent in the first, the cases may still substantially overlap.") (citing *See Your Preferred Printer, LLC v. United Wholesale, LLC*, 2012 WL 3016771, at *4 (E.D. La. July 23, 2012)). To hold otherwise would invite gamesmanship—allowing parties to circumvent the first-to-file rule simply by repackaging the same factual allegations under new legal labels. That is precisely what the rule is designed to prevent.

Because Plaintiffs fail to address the substantial overlap in core facts and issues, the Court should apply the first-to-file rule and transfer the matter to the Northern District of California.

**B.** **There Are No "Compelling Circumstances" That Would Justify Disregarding the First-to-File Rule.**

In this Circuit, the first-to-file rule should be applied ***absent*** "***compelling circumstances***." *Mann Mfg., Inc.*, 439 F.2d at 407 (emph. added). While the Fifth Circuit has not exhaustively defined what qualifies as "compelling circumstances," courts within this Circuit have consistently recognized only two narrow exceptions: (1) when a party engages in "bad faith"—e.g., by inducing an opposing party to delay filing a lawsuit; and (2) when a party makes an "anticipatory filing" in anticipation of a lawsuit, which can lead to forum shopping. *See In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *7 (E.D. Tex. Oct. 21, 2020). Plaintiffs' Opposition confirms that neither exception applies here. There is no allegation of bad faith, nor could there be any suggestion that the N.D. Cal. Actions were filed in anticipation of this case.

Rather than identify any actual compelling circumstances that would justify an exception (which they cannot), Plaintiffs argue that *Hart v. Donostia LLC*, 290 F. Supp. 3d 627 (W.D. Tex. 2018), and its analysis of *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir.

- 5 -

1983), allow the Court use the factors outlined in 28 U.S.C. § 1404(a) in its compelling circumstances analysis. *See* Opp. at 10. The *Hart* decision, however, is legally flawed and its reasoning has been rightfully rejected by numerous other courts. *See e.g., Kolb*, 2023 WL 8244293, at *5 ("Plaintiffs attempt to oppose the motion to transfer based on the 28 U.S.C. § 1404(a) factors, but [p]laintiffs' efforts to invoke Section 1404(a) . . . are misplaced under a first-to-file rule analysis."); *Strukmyer, LLC v. Infinite Fin. Sols., Inc.*, 2013 WL 6388563, at *7 (N.D. Tex. Dec. 5, 2013); *Ethos Grp. Consulting Servs., LLC v. Kawecki*, 2020 WL 7828789, at *5 (N.D. Tex. Dec. 31, 2020; *Truinject Corp. v. Nestle S.A.*, 2020 WL 6781578, at *3 (E.D. Tex. Nov. 18, 2020). The Court's analysis in *Truinject Corp.* is instructive:

> In *Mission Insurance*, the Fifth Circuit did affirm the district court's decision to apply the first-to-file rule and dismissed the first-filed action after analyzing the § 1404 convenience factors. *Mission Ins. Co.*, 706 F.2d at 603. But this was appropriate because the district court in *Mission Insurance* was the *first-filed court*, and it was therefore within its discretion to make this decision. *Id.* at 600-01. Such is not the case here. *Hart* is also inapposite because the district court there did not find that the two lawsuits in question substantially overlapped. *Hart*, 290 F. Supp. 3d at 632–33. By contrast, the case currently before the Court and the case in the District of Delaware do substantially overlap. *Mission* and *Hart* do not support [Plaintiff's] argument.

2020 WL 6781578, at *3 (emph. in original). Indeed, when a defendant moves to transfer under the first-to-file rule, as is the case here, the Court's **only inquiry** is "which suit was filed first, and whether substantial overlap between the suits exists." *Strukmyer*, 2013 WL 6388563, at *7. Including the Section 1404(a) factors in an analysis of the first-to-file rule would "trench upon the authority of its sister court" and go against the principles of comity and sound judicial administration that underlie the first-to-file rule. *Barnes v. Sandbox Transportation, LLC*, 2018 WL 11471781, at *4 (W.D. Tex. June 16, 2018) (citing *Joy Glob. Conveyors, Inc. v. Richard Goettle, Inc.*, 2018 WL 1249277, at *3 (W.D. La. Mar. 9, 2018) (second-filed court refused to consider § 1404(a) convenience factors as compelling circumstances to avoid transfer to first-filed

court because consideration would "potentially interfere with or confuse [the first-filed court's] proceedings.")).

In sum, Plaintiffs' reliance on the Section 1404(a) convenience factors as a basis to oppose transfer under the first-to-file rule is improper. The first-to-file rule operates independently of the Section 1404(a) framework and is governed by its own standard. Because Plaintiffs offer no argument beyond the Section 1404(a) factors, they have failed to demonstrate the "compelling circumstances" required to override the first-to-file presumption. Accordingly, Defendant's Motion should be granted.

### C. Section 1404(a) Factors Support Transfer.

As outlined above, should the Court find that the core issues substantially overlap, the Court can (and should) transfer this case to the Northern District of California under the first-to-file rule without any analysis of the Section 1404(a) factors. ***Only if*** the Court determines that the first-to-file rule does not apply (which it should not), should the court address Section 1404(a). As outlined below, both the public and private factors support transfer.

1. *Private Interest Factors Favor Transfer.*

Plaintiffs argue that because "much of the evidence is located on the internet," it can be "accessed digitally … from Louisiana." Opp. at 11. But courts have consistently rejected the notion that digital accessibility renders physical location irrelevant. *See SQIP, LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447 (E.D. Tex. 2024). Defendant's headquarters and its physical documents are physically located in the Northern District of California—which favors transfer. In terms of securing the attendance of witnesses, Plaintiffs ignore the fact that they are seeking to represent a putative nationwide class. Witnesses will be forced to travel whether the class action is in the Northern District of California or the Eastern District of Louisiana, and a ***much larger*** percentage of that putative class (15.7%) reside in California as opposed to Louisiana (0.49%).

This fact supports transfer. *See Kervin v. Supreme Serv. & Specialty Co.*, 2015 WL 1540157, at *4 (S.D. Tex. Apr. 7, 2015) (transferring case to Louisiana where larger percentage of putative class members reside compared to current venue). Further, Plaintiffs ignore the significant judicial efficiencies gained by consolidating this case with twelve substantially similar actions already pending in the Northern District of California. These cases involve overlapping witnesses, discovery, and legal issues and would be significantly streamlined by transfer and consolidation. *See Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 768 (E.D. Tex. 2009); *MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*, 2011 WL 4591917 (E.D. Tex. Sept. 30, 2011). In short, the private interest factors—including access to evidence, witness convenience, and judicial economy—all weigh strongly in favor of transfer.

    2.    *Public Interest Factors Favor Transfer.*

Contrary to Plaintiffs' position, the public interest factors also weigh ***in favor*** of transfer. First, consolidating duplicative litigation reduces the number of active cases and promotes efficiency. *See Chem. Specialties, Inc. v. Osmose, Inc.*, 2006 WL 237014, at *4 (S.D. Tex. Jan. 30, 2006) (finding transfer warranted if "[c]onsolidated proceedings . . . may alleviate, albeit minimally, congestion in both . . . Divisions."). Moreover, transfer is appropriate when it facilitates the swift resolution of the litigation as a whole—even if some parties experience inconvenience. *See In re Keffer Dev. Servs., LLC, Data Sec. Breach Litig.*, No. MDL 3159, 2025 WL 2327173, at *1 (U.S. Jud. Pan. Mult. Lit. Aug. 8, 2025).

Second, this District—and Louisiana as a whole—have no "local interest" in the outcome of this lawsuit. While Plaintiffs predict "[t]here are likely thousands of Louisianans who have been impacted," Opp. at 14, they only make up a very small percentage of the putative ***nationwide*** class Plaintiffs seek to represent arising from a data incident which has ***no special connection to Louisiana***. *See Mendoza v. Microsoft, Inc.,* 1 F. Supp. 3d 533, 547 (W.D. Tex. 2014) (District

"does not have a strong local interest" where "Plaintiffs purport to bring a nationwide class action" and only a fraction of named plaintiffs resides in the district). If any district is likely to have a "local interest" in this litigation, it is the Northen District of California, which has an interest in the conduct of its resident, Defendant. *See Uniloc USA, Inc. v. Distinctive Dev. Ltd.,* 964 F. Supp. 2d 638, 651-52 (E.D. Tex. 2013) (Districts where defendants were headquartered had "a strong interest and connection to this litigation.").

Lastly, Plaintiffs argue that this Court should retain the case due to its familiarity with Louisiana law. *See* Opp. at 15. But the claims they assert under Louisiana law are not legally viable. For example, Plaintiffs bring a class claim under LUTPA, despite clear precedent that LUTPA ***does not permit class actions***. *See Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 393 (5th Cir. 2002); *Huber v. BioScrip Infusion Servs.*, 2021 WL 1313411, at *7 (E.D. La. Apr. 8, 2021). Their only other Louisiana-based claim—an invasion of privacy under Article I, § 5 of the Louisiana Constitution—is equally flawed. That provision applies only to state actors, and the Tea App is a private entity. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). Defendant will address these deficiencies in a motion to dismiss. But, for now, Plaintiffs should not be allowed to manufacture a need for local law expertise based on baseless claims.

Thus, the public interest factors, just like the private factors, weigh in favor of transfer to the Northen District of California.

**D.     Plaintiffs Fail to Establish that Defendant Purposefully Availed Themselves of the Forum State as Required to Establish Personal Jurisdiction.**

Plaintiffs argue that Defendant is subject to personal jurisdiction in Louisiana because it "advertises to Louisiana citizens through social media platforms like Instagram and TikTok." Opp. at 16. But these generalized, nationwide marketing efforts are precisely the kind of contacts the Fifth Circuit has found insufficient to establish purposeful availment. *See Revell v. Lidov*, 317

F.3d 467 (5th Cir. 2002) (no personal jurisdiction in Texas where online content was "presumably directed at the entire world" and not specifically at Texas); *see also Johnson v. TheHuffingtonPost.com*, Inc., 21 F.4th 314, 324 (5th Cir. 2021) ("General jurisdiction for every state where HuffPost is visible would destroy its meaning for HuffPost's home states, to whom that awesome power is properly reserved."). Plaintiffs fail, therefore, to establish this Court has personal jurisdiction over Defendant.

### E. Plaintiffs Waive the Argument on Defendant's Request that the Court Stay Case Deadlines Pending a Decision on the Motion to Transfer or Dismiss.

Plaintiffs did not respond to Defendant's motion to stay case deadlines—a request made on the grounds that a stay would promote efficiency without causing undue prejudice. *See generally*, Opp. Courts in the Fifth Circuit have held that failure to respond constitutes waiver. *See Crouch v. Lakeview Loan Servicing, LLC.*, 2021 WL 928026, at *2 (E.D. La. Mar. 11, 2021) (*quoting Kellam v. Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013)). Accordingly, Plaintiffs waive any objection to the requested stay.

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court transfer this action to the United States District Court for the Northern District of California or dismiss this action for lack of personal jurisdiction. Defendant also respectfully requests that the Court stay all case deadlines pending its decision on the motion to transfer or dismiss.

\\

\\

\\

\\

\\

Respectfully submitted this 15th day of September, 2025.

        */s/ James M. Garner*
        JAMES M. GARNER (#19589)
        STUART D. KOTTLE (#37194)
        KAYLYN B. HANDY (#38673)
        SHER GARNER CAHILL RICHTER
        KLEIN & HILBERT, L.L.C.
        909 Poydras Street, Twenty-Eighth Floor
        New Orleans, Louisiana 70112
        Telephone: (504) 299-2100
        E-mails: jgarner@shergarner.com
                 skottle@shergarner.com
                 khandy@shergarner.com

        *Attorneys for Defendant Tea Dating Advice, Inc.*