UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GABRIELLE KARAM, SAMANTHA STEVENS, AND MEREDITH KARAM,** individually and on behalf of all others similarly situated | * | **CIVIL ACTION NO. 25-1790** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |
| | * | |
| **TEA DATING ADVICE, INC.** | | |
| *   *   *   *   *   *   *   * | | |

### ORDER & REASONS

Before the Court is a motion to transfer venue filed by Defendant Tea Dating Advice, Inc. R. Doc. 3. Plaintiffs oppose the motion. R. Doc. 6. Defendant replied. R. Doc. 7. Considering the briefing, record, and applicable law, the Court now rules as follows.

I.   BACKGROUND

This case arises out of alleged data breaches revealing Plaintiffs' and similarly situated persons' personal information resulting from apparent actions or inactions by Defendant Tea Dating Advice, Inc. ("Tea Dating"). R. Doc. 1-3 at 1–2. Plaintiffs submit that Tea Dating operates "a mobile application that purports to provide a safe and private space for women to share information about men they date." *Id.* at 2. Tea Dating allegedly required users to submit "selfies and IDs as an added layer of safety to ensure that only women were signing up for the app." *Id.* at 5. Plaintiffs allege that Tea Dating "fraudulently claimed that their verification images would be deleted, and [that] their personal information [would be] secured." *Id.* at 8. However, Tea Dating purportedly did not delete this sensitive user data and instead "kept [the images and information] in an unsecured Google Firebase storage bucket that was publicly accessible." *Id.* at 5–6. The alleged failures of Tea Dating to maintain its users' data privacy came to light on or about July 25,

1

2025, when Tea Dating allegedly publicly acknowledged that it had experienced a data breach of users' verification images. *Id.* at 1–6. Then, a few days later, a purported second data breach occurred which "allowed unauthorized persons to access millions of private messages sent between users of the app." *Id.* at 2.

Plaintiffs brought the instant suit on behalf of themselves and other "similarly-situated individual who downloaded, uploaded verification images to, and used and/or sent direct messages on the Tea App between 2023 and the present." *Id.* at 7. Plaintiffs assert in their Petition that there are common questions of law and fact applicable to all class members, and that answers to these common questions will resolve the question of damages shared by each class member. *Id.* at 10. They also aver that they are typical and representative of class members, that a class action is the superior method to adjudicate this controversy, and that Plaintiffs will adequately represent and protect the interest of the class members. *Id.* at 10–12. Plaintiffs assert the following claims against Tea Dating: (1) invasion of privacy; (2) negligence; (3) breach of contract; (4) unjust enrichment; and (5) violation of federal and state consumer protection laws. *Id.* at 12–18.

Plaintiffs filed their original Petition in state court, which Defendant timely removed on the basis of diversity jurisdiction. R. Doc. 1; *see also* 28 U.S.C. § 1332(d) (describing definitions pertaining to class actions related to removal pursuant to diversity jurisdiction).

**II.    PRESENT MOTION**

Defendant Tea Dating now moves this Court to transfer venue to the Northern District of California or, in the alternative, dismiss this action for lack of personal jurisdiction. R. Doc. 3. Tea Dating submits that there are "twelve other substantially similar putative class actions" filed against them in the Northern District of California, where Defendant is headquartered. R. Doc. 3-1 at 1. Defendant submits that nine of the twelve Northern District of California cases were filed

before Plaintiffs here filed the instant suit. *Id.* at 4–7. And since the filing of this motion to transfer, the cases pending before the Northern District of California have since consolidated under the docket of the first-filed case in that district. *See In re: Tea Dating Advice Data Breach Litig.*, No. 25-63221, at R. Doc. 42 – Order Granting Motion to Consolidate and Setting Briefing Schedule.[1]

Tea Dating argues that it is entitled to have this case transferred pursuant to the first-to-file rule. R. Doc. 3-1 at 7–10. It avers that the instant suit and the now-consolidated California cases have substantial overlap, which can be seen by comparing the descriptions of the proposed classes and the types of claims being asserted on behalf of the classes. *Id.* Tea Dating additionally argues that the factors set forth in 28 U.S.C. § 1401(a) support transfer because (1) Defendant is headquartered in the Northern District of California, (2) the relevant witnesses, documents, and other evidence are likely located in the Northern District of California, (3) the Petition does not identify any meaningful relationship to Louisiana as a forum beyond these Plaintiffs residing in and using the app in this judicial district, and (4) the interest of justice favors this Court affording Defendant the opportunity to seek consolidation in with the related California cases. *Id.* at 10–11.

Plaintiffs oppose the motion. R. Doc. 6. They argue that the first-to-file rule should not apply here because there is not enough substantial overlap between Plaintiffs' claims and facts in this case and the claims and facts being advanced in the now-consolidated Northern District of California action. *Id.* at 5–7. They assert that their suit brings distinct legal theories related to common law rights to privacy and State-specific consumer protection laws, and that "[n]one of the [Northern District of California] cases allege violations of Plaintiffs' right to privacy arising under the various state constitutions." *Id*. at 7. Thus, they aver that their suit casts a wider net than the now-consolidated Northern District of California matter. *Id.* at 9–10. They also argue that the

---

[1] The Court may take judicial notice of this publicly available fact pursuant to Fed. R. Evid. 201.

public and private factors weigh against transferring venue. *Id.* at 10–15. Defendant replied, largely reiterating its initial arguments. R. Doc. 7.

### III.     LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Accordingly, there exists a threshold inquiry of whether the suit originally could have been brought in the venue where the action is sought to be transferred. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("In applying the provisions of § 1404(a), we have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."). To do so, courts "must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016).

But some courts cannot reach a venue analysis because of "principals of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). One such doctrine that could relieve this Court from conducting a venue analysis is the first-to-file rule. "[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). "The rule does not require the cases to be identical[; i]nstead, the critical inquiry is one of substantial overlap." *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (quoting *Save Power*, 121 F.3d at 950) (internal

4

quotations and footnotes omitted). "Once the likelihood of substantial overlap between the two suits had been demonstrated, it [i]s no longer up to the court in [the later-filed case] to resolve the question of whether both should be allowed to proceed." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971).

## IV. DISCUSSION

Defendant asks us to transfer this case to the Northern District of California, a venue where this case could have been brought originally because it is the venue wherein Tea Dating has their headquarters. R. Doc. 3-1 at 1–3; 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). Thus, there is an adequate alternative forum wherein this case can proceed. *In re Volkswagen AG*, 371 F.3d at 203. The Court will turn to address the first-to-file rule and will thereafter address the implications of its application to this case.

### A. First-to-File Rule Supports Transfer.

Simultaneous suits on similar or identical issues pending before two federal courts triggers the application of the discretionary "first-to-file" rule. *See Cadle Co. v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999); *Xodus Med., Inc. v. TGV Innovations LLC*, No. 21-616, 2022 WL 591991, at *1 (E.D. La. Jan. 7, 2022). The first-to-file rule is a "forward-looking doctrine" that is utilized to "maximize judicial economy." *Cadle*, 174 F.3d at 604. The Fifth Circuit recognizes that generally "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power*, 121 F.3d at 950. When assessing the application of the first-to-file rule, a court must consider (1) whether the two pending actions are duplicative or involve substantially similar issues such that

only one court should hear the issues; and (2) which court should resolve the issues. *Murray v. Wilson*, No. 08-2005, 2008 WL 3498226, at *2 (E.D. La. Aug. 8, 2008).

Both prongs of the first-to-file rule counsels this Court to transfer this matter to the Northern District of California. First, there is clear substantial overlap between this suit and the suit in the Northern District of California. For example, the class Plaintiffs here wish to represent and the class forming in the Northern District of California appear to be nearly identical. The Amended Class Action Complaint for Damages filed in the now-consolidated Northern District of California action details that "Plaintiffs bring this action individually and on behalf of all Tea users whose personal information was exposed in the breach, seeking damages, restitution, and injunctive relief." N.D. Cal. Case No. 25-6321, R. Doc. 49 at 4. The Amended Complaint then duly marches through the various plaintiffs—including those from Texas, North Carolina, New York, Illinois, Colorado, and California—and consistently characterizes their experienced harm as resulting from having their personal information compromised in the Tea Dating data breaches. *See id.* at 4–24. The Complaint goes on to propose a nationwide class defined as "[A]ll persons residing in the United States whose personally identifiable information was exposed in the Tea data breach announced on or about July 25, 2025." *Id.* at 42.

Here, Plaintiffs submitted the following proposed class: "All U.S. citizens who downloaded and used the Tea App prior to and/or at the time of the Breaches, including those whose images, PII, and/or direct message were disclosed in the First Breach announced on July 25 and/or the Second Breach announced on July 28, 2025." R. Doc. 1-3 at 9. That Plaintiffs here explicitly include a "Second Breach" in its proposed class description is not concerning here, as the Amended Complaint in the Northern District of California Action appears to consider this "Second Breach" together with the "First Breach." *See* N.D. Cal. Case No. 25-6321, R. Doc. 49 at

2 ("Days later, the breach was discovered to be far more extensive than initially reported—exposing not just 72,000 images but also over 1.1 million private messages between users, containing intimate discussions about reproductive health, relationships, and personal safety."). Plaintiffs here categorize the Second Breach as the disclosure of "private messages sent between users of the app." R. Doc. 1-3 at 2. Since the Amended Complaint in the Northern District of California contemplates the exposure of millions of private messages, this Court sees substantial similarity between the proposed classes in this case and in the Northern District of California case.

The same applies to the legal arguments advanced in this suit and in the Northern District of California suit. Plaintiffs here argue that their suit casts a wider net than the suit in the Northern District of California because they allege violations of common law privacy rights arising from various state constitutions and consumer protection laws. R. Doc. 6 at 7. But the Amended Complaint in the Northern District of California action asserts as its third cause of action "Invasion of Privacy by Intrusion." N.D. Cal. Case No. 25-6321, R. Doc. 49 at 50. Moreover, Plaintiffs aver that they bring suit related to consumer protection laws—so does the Amended Complaint in the Northern District of California action. *Id.* at 63–75 (bringing claims based on state-specific privacy-related laws). Therefore, Plaintiffs arguments fail, and this Court finds that the legal theories being advanced in both lawsuits are facially substantially similar.

Overall, after careful consideration of the facts and claims asserted in Plaintiffs' petition here and the facts and claims asserted in the Amended Complaint in the consolidated Northern District of California case, this Court certainly notices the substantial overlap between this case and the consolidated Northern District of California case—the same app, data breaches, and experienced harms are at issue in both cases, and Plaintiffs here wish to represent a substantially similar class that is already taking form in the Northern District of California.

The second prong asks this Court to assess which court should resolve the issues. *Murray*, 2008 WL 3498226 at *2. Because this Court has identified that there is a likelihood of substantial overlap between the now-consolidated Northern District of California suit and the instant case, "it [i]s no longer up to [this Court] to resolve the question of whether both [cases] should be allowed to proceed." *Mann*, 439 F.2d at 408. Instead, "the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in [the first-filed district] belong to the United States District Court in [the first-filed district]." *Id.* "In the absence of 'compelling circumstances,' the district court who gets the suit first should be the one to decide the case." *Excel Music, Inc. v. Simone*, No. 95-3623, 1996 WL 5708 at *6 (quoting *Mann,* 439 F.2d at 407).

Here, Plaintiffs have not demonstrated compelling circumstances such as bad faith, anticipatory filing, or forum shopping that could caution this Court against transferring the instant suit to the Northern District of California. Therefore, because this Court finds that there is substantial enough overlap to trigger application of the first-to-file rule, and because no party disputes that the first case was filed in the Northern District of California, this Court will order this matter to be transferred to the Northern District of California.

### B.  Venue Transfer Analysis and the First-to-File Rule.

When a district court finds that application of the first-to-file rule is warranted, "§ 1401(a) factors are irrelevant." *Sommery Lot 2 LP v. Sommery Round Rock TX, LLC*, No. 23-1442, 2024 WL 2045704, at *5 (W.D. Tex. May 7, 2024), *report and recommendation adopted*, 2024 WL 3189268 (June 25, 2024). As explained previously, "the 'first-to-file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp.*, 125 F.3d at 920. "'Accordingly, the majority of district courts find

8

that only the first-filed court should engage in a § 1404(a) analysis.'" *Sommery Lot*, 2024 WL 2045704, at *5 (quoting *Barnes v. Sandbox Transp., LLC*, No. 18-50, 2018 WL 11471781, at *3 (W.D. Tex. June 16, 2018)).

This Court has found substantial overlap between the instant case and the Northern District of California Action. As such, it is inappropriate for this Court, as the second-filed Court, to "decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated." *Sutter Corp.*, 125 F.3d at 920. The Court will transfer this case to the United States District Court for the Northern District of California for resolution of whether this Louisiana action should be allowed to proceed independently or should be consolidated with the related, pending case in that district.

## V. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendant's motion to transfer, R. Doc. 3, is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter be and is hereby transferred to the United States District Court for the Northern District of California, where Tea Dating has its headquarters and where this Court is aware of a substantially similar and related pending lawsuit. *See In re: Tea Dating Advice Data Breach Litig.*, No. 25-63221. Pursuant to Local Rule 83.5.1, this Order is hereby stayed for 21 days from the date this Order is entered on the docket.

New Orleans, Louisiana, this 24th day of September, 2025.

_____
THE HONORABLE ELDON E. FALLON

9